FURCHES, J., dissents, arguendo.
The plaintiff introduced B. F. Hill, who, together with his brother, W. A. Hill, had administered on the estate of their father (the intestate of plaintiff) in South Carolina, to prove an acknowledgment and new promise by the defendant, as contained in four letters which he and his brother received from the defendant while they, as administrators, were in possession of the note. One of the (901) letters is referred to in the opinion of the Court and copied in full in the dissenting opinion of Associate Justice Furches. The others were dated, respectively, 16 April, 6 May and 27 July, 1891, and were as follows:
"B. F. HILL.
"SIR: — I wrote you a note some time ago and requested you to let me hear from you about the note that you have placed in the hands of lawyer for collection.
"I think that I can make the matter all right without you bringing suit for your money. I have a good prospect of selling some *Page 562 
mineral land this spring, and if I do I will have the means to settle off my note without any trouble. I am corresponding with two large syndicates about the property.
"Write me at once. I have been sick for ten weeks, but will be down as soon as I get straight.
"Yours truly, W. C. HILL."
"B. F. HILL.
"DEAR SIR: — Yours of 22 April at hand, and will say in reply, if you and William Hill will satisfy the balance of the heirs and trade for their interest in the note due the estate it will oblige me very much and save me cost and trouble. I have at all times been willing to secure the debt, with mortgage or otherwise, so as not to expose my property to public sale. I will have to sell some real estate to get the money anyway, and I think it will bring more to sell it privately. I can pay you now $3,000, or more, in good paper, with interest; (902) the notes not due yet, but have land for security.
"If you will get up the rest of the claims I will pay you and William eight per cent on the same.
"I have valuable iron ore, you will see from the enclosed letter from Dr. Williams, agent for the company. I think that I will effect a sale with the company for a good round price that will pay all my debts and have a good surplus left, without selling any of my land at home. I am looking for Dr. Williams any day.
"If we should trade, the money will be paid down on receipt of title.
"The company wrote me on 26 April about my ores, and you can see that they are after my property. There is another large syndicate wanting the same property.
"I will let you hear from me soon again. I will not be down until Williams comes or I hear from him.
"You will please write to Mr. Carson and advise him on the matter, and yours truly, W. C. HILL."
"P. S. — Write soon."
"MR. W. A. AND B. F. HILL:
"I understand that Mr. Carson would be up soon, I presume to bring action against me concerning my indebtedness. If it will suit you I will give you notes for the whole amount I owe the estate at any time you or Ben may come up. I do not want to put my property up at forced sale, for it would not bring half its value for cash. I learned that you appraised my note doubtful, but I assure you that I can pay dollar for dollar. I can give you good notes, with real estate securities. The real estate stands good for the debt until paid, with interest from *Page 563 
date. I will turn the notes over to you, and you can place them to my credit when collected. I am confident that it was through my help that your father was successful. See Ben and write (903) me right away. It will be a great deal more satisfaction to me in that way than to send Mr. Carson to see me. I can, any day you or Ben may come, give you these notes, as I write you.
"Answer at once. W. C. HILL."
His Honor ruled and stated that he would hold and charge the jury that the Code of Civil Procedure had so changed the law in regard to promises sufficient to repel the bar of the statute that now a promise, to have such effect, must be an express promise to pay the debt, and that an acknowledgment or an implied promise is insufficient for that purpose; that the evidence in this case did not show an express promise to pay the debt, and for that reason the jury should answer "No" to the issue submitted to them in this case, to-wit, "Is the defendant indebted to the plaintiff, and if so, in what amount?" and that the plaintiff cannot recover in this action. At this intimation of the judge the plaintiff excepted, and in deference thereto submitted to a nonsuit and appealed.
It is admitted that the note sued on is barred by the statute of limitations, unless the remedy to collect has been revived by the contents of four letters written by the defendant, which letters the plaintiff alleges contain a new promise to continue the liability of the defendant. The letters, without doubt, acknowledge the debt, and it was argued for the plaintiff that in such case the law implies a promise to pay. This Court has decided to the contrary. InSimonton v. Clark, 65 N.C. 525, it was said: "A mere (904) acknowledgment of the debt is not sufficient to repel the statute, but there must be such facts and circumstances as show that the debtor recognized a present subsisting liability and manifested an intention to assume or renew the obligation." We are of the opinion that this means that the acknowledgement of a debt, which would be sufficient to repel the statute, must manifest an intention to renew the debt as strong and convincing as if here had been a direct promise to pay it. This principle, we think, runs through all the decisions of this Court on this subject. The decision in the last-named case was made under the old law, it is true, but this Court has held, in Royster v. Farrell, 115 N.C. 306, that "The Code has not altered at all the effect *Page 564 
of a new promise or acknowledgment." Section 172 (Lord Tenderden's Act) is merely a rule of evidence, enacted to prevent fraud and perjury. The original statute of limitations (21 James I., ch. 16) had no provision as to new promises and acknowledgments. The courts made the law on this subject, and made it apply to all causes of action that rested on a promise. In Riggs v. Roberts, 85 N.C. 151, it was decided that an unaccepted offer to pay a debt by a conveyance of land is not such a recognition of a subsisting liability as in law will imply a promise to pay it. In Greenleaf v. R. R., 91 N.C. 33, this Court declared that the promise must be in writing, extend to the whole debt, and must be to pay in money and not in something else of value. The promise to pay the debt, too, must be unconditional.Taylor v. Miller, 113 N.C. 340; Greenleaf v. R. R., supra. Now, on applying these principles to the facts in this case, as they appear in the letters of the defendant, we find the acknowledgment of the debt therein contained is complete. But we find also, running (905) through all the letters, that the promise to pay is conditional — that it is made to pay in notes secured by mortgages on lands which he hoped and intended to sell in the future, the notes to be given by the purchasers of the lands and secured by mortgage on the same. He concluded his last letter as follows: "If you will only give me time, I will, at any time you or Ben may come, turn the notes over to you for the full amount of my note, to be credited on my note. I do not think it will do any good for you to send a lawyer to see me, as I will not do any more than I have promised to do. I have disposed of my property that I offered Ben, and have only notes to secure you with now." While his Honor's charge might not have been in the strictest sense correct, yet we agree with him that the plaintiff was not entitled to recover.
No error.