SPIVEY AND SELF, INC. v. HIGHVIEW FARMS, INC., HARRY WELCH, BARBARA WELCH, CHARLES WELCH AND HIGHVIEW FARMS GOLF CLUB, INC.

No. 9219SC325

(Filed 6 July 1993)

1. **Contractors § 11 (NCI4th) — construction of golf course — breach of contract action — plaintiff's lack of contractor's license — directed verdict for defendant denied**

The trial court properly denied defendants' motion for a directed verdict on the ground that plaintiff lacked a general contractor's license in an action arising from defendants' failure to pay plaintiff for work performed in building a golf course. Although defendants contend that the work performed by plaintiff was "grading" as that term is used in N.C.G.S. § 87-1 and required "special skill" as used in N.C.G.S. § 87-10 so that a general contractor's license is required, the grading of the land was only one of many types of work necessary in the construction of the golf course and it would be incorrect to classify the entire construction as grading. However, assuming that construction of a golf course is "building and construction" as contemplated by *C.C. Walker Grading & Hauling, Inc. v. S.R.F. Management Corp.*, 311 N.C. 170, plaintiff was required to have a general contractor's license if the cost of the grading work was $45,000 or more because the grading was an integral part of the golf course construction. There was no evidence in this case as to the portion of the $1,100,000 contract which was for grading and, because the record does

SPIVEY AND SELF v. HIGHVIEW FARMS

[110 N.C. App. 719 (1993)]

not reflect that the grading had a cost of at least $45,000, the trial court correctly determined that plaintiff did not violate N.C.G.S. § 87-1 and was not precluded from suing defendants.

**Am Jur 2d, Building and Construction Contracts § 130; Licenses and Permits §§ 63-68.**

**Failure of building and construction artisan or contractor to procure business or occupational license as affecting enforceability of contract or right of recovery for work done— modern cases. 44 ALR4th 271.**

2. **Contracts § 77 (NCI4th)— golf course construction—payment not made—substantial performance—directed verdict for plaintiff—erroneous**

The trial court erred by directing a verdict for plaintiff in an action to collect amounts owed for construction work on a golf course where it was not disputed that plaintiff stopped work and that the golf course was not completed at that time. The contract is silent as to the date plaintiff was to perform and there remains the question of whether plaintiff had substantially performed its promises under the contract as of June 5, the due date of the payment which was not made.

**Am Jur 2d, Building and Construction Contracts §§ 41-43.**

3. **Rules of Civil Procedure § 59 (NCI3d)— motion to amend judgment—plaintiff not registered to do business in N.C.— denial not an abuse of discretion**

The trial court did not abuse its discretion in an action to collect monies due for construction of a golf course by denying defendants' motion to amend the judgment under N.C.G.S. § 1A-1, Rule 59 to delete the award to plaintiff where defendants failed to raise the issue in a motion prior to trial. Although defendants contended that plaintiff was ineligible to recover in the courts of North Carolina because it was not registered in North Carolina and that defendants had been misled about plaintiff's status, maintaining an action in the courts of North Carolina requires a certificate of authority rather than registration. Defendants did not ask in their interrogatories whether plaintiff possessed a certificate of authority to transact business in the state and plaintiff answered negatively the only question in the interrogatories (whether it was registered) which might have misled defendants. The answers to questions concerning

SPIVEY AND SELF v. HIGHVIEW FARMS

[110 N.C. App. 719 (1993)]

plaintiff's tax return and whether it was registered in South Carolina had nothing to do with whether plaintiff had obtained a certificate of authority in North Carolina. N.C.G.S. § 55-15-02(a); N.C.G.S. § 55-15-03(c).

**Am Jur 2d, Judgments §§ 739-750.**

4. **Appeal and Error §§ 10, 422 (NCI4th) — no proof of service of notice of appeal—appeal dismissed**

An appeal from a directed verdict for defendants on their counterclaim was dismissed where there was no proof of service of the notice of appeal on the other parties to the appeal as required by the Rules of Appellate Procedure. Moreover, the arguments made by plaintiff in support of its contentions are not properly presented as "cross-assignments of error" because they do not present "an alternate basis in law for supporting the judgment" from which defendant appealed. N.C. R. App. P. 10(d); N.C. R. App. P. 26(b), (d).

**Am Jur 2d, Appeal and Error §§ 316 et seq., 691 et seq.**

Appeal by plaintiff and defendants from judgment entered 3 October 1991 and order entered 20 December 1991 in Rowan County Superior Court by Judge Judson D. DeRamus, Jr. Heard in the Court of Appeals 9 March 1993.

*Robert Lee Saunders for plaintiff-appellee/appellant.*

*Kluttz, Reamer, Blankenship & Hayes, by Richard R. Reamer, for defendant-appellants/appellees.*

GREENE, Judge.

Highview Farms, Inc., Harry Welch, Barbara Welch, Charles Welch, and Highview Farms Golf Club, Inc. (defendants), appeal from the trial court's order granting Spivey and Self, Inc.'s (plaintiff) motion for a directed verdict on portions of plaintiff's breach of contract claim and from the trial court's order denying defendants' Rule 59 motion to alter or amend the judgment. Plaintiff appeals from the trial court's order granting defendants' motion for a directed verdict on portions of plaintiff's breach of contract claim and from the trial court's denial of plaintiff's motion for directed verdict on portions of defendants' counterclaim for breach of contract.

Plaintiff, a South Carolina corporation, and defendants entered into a contract 6 November 1989, under which plaintiff would construct an eighteen-hole golf course on land belonging to defendants. Work began on the project in November, 1989. Plaintiff left the job on 28 June 1990, and on 19 July 1990, filed a complaint against defendants, alleging defendants breached the contract in that they failed to make timely payments under the contract and seeking damages in the amount of $226,000.00.

A copy of the contract was attached to the complaint, and reflected an agreement that required plaintiff, for the sum of $1,100,000.00, to provide all labor, materials, and equipment for construction of the course according to plans and specifications drawn by defendants' architect.

The contract called for payment to be made in ten installments as follows:

$55,000.00 —  When construction starts
$125,000.00 —  Dec. 5, 1989
$100,000.00 —  Jan. 5, 1990
$125,000.00 —  Feb. 5, 1990
$135,000.00 —  Mar. 5, 1990
$125,000.00 —  Apr. 5, 1990
$150,000.00 —  May 5, 1990
$150,000.00 —  June 5, 1990
$91,000.00 —  July 5, 1990

Leaving a balance of $135,000.00 which is to be paid when the sand traps are excavated and greens are planted.

A hand-written modification to the contract stated "Less 10%" and was followed by the initials of plaintiff's president Hoyt Spivey (Spivey). In addition, the contract stated that plaintiff was required to implement erosion control measures.

Plaintiff's complaint alleged that defendants had failed to make the 5 June 1990 payment, which amounted to $135,000.00 after the deduction of ten percent, and that the 5 July 1990 payment of $91,000.00 was money retained by defendants which was also due plaintiff.

SPIVEY AND SELF v. HIGHVIEW FARMS

[110 N.C. App. 719 (1993)]

Defendants answered, alleging that the June payment was withheld because plaintiff had fallen behind in its work. Defendants also counterclaimed for breach of contract, alleging that plaintiff's failure to continue work had prevented it from completing the course prior to the 1991 growing season. Defendants claimed damages of at least $340,000.00.

Prior to trial, defendants served interrogatories on plaintiff, which were answered. Defendants also took the deposition of Spivey.

At trial, Spivey testified for plaintiff that the initial payment of $55,000.00 was made. Payments continued through May, with the last two being made late, and plaintiff continued to work on the job. The 5 June 1990 payment was never made, and should have amounted to $135,000.00 pursuant to the hand-written modification of the contract calling for defendants to retain ten percent of each payment. Spivey further testified that defendants also owed plaintiff $91,000.00, which consisted of the total amount of retainage called for in the hand-written modification of the contract. The hand-written modification of the contract was made, according to Spivey, to correct an error he had made in the original contract, in that

> I normally hold or allow the owners to hold a 10% retainage for security to make sure I am going to do my work so I made a notation on the contract that 10% was to be deducted each month and held until July 5th as retainage. . . . [T]he $91,000.00 on July 5th in the schedule in the contract was always suppose[d] to be retainage.

Spivey also testified that Charles Welch told him prior to the time the June payment was due that defendants had run out of money and did not have funds to make the June payment. Spivey stated that plaintiff was responsible for implementing an erosion control plan pursuant to detailed engineering drawings provided by defendants. He also admitted that plaintiff was "not licensed or registered in North Carolina and . . . does not have a North Carolina [general] contractor's license." At the end of plaintiff's evidence, defendants moved for a directed verdict on the grounds that plaintiff rather than defendants had breached the contract by failing to perform the work as scheduled, and that plaintiff was not entitled to recover because it was not a licensed general contractor. The motion was denied.

Defendants' evidence included testimony by Charles Welch that he did not tell Spivey that the June payment would not be made, and that he talked with Spivey several times about defendants' concerns that work on the course was not progressing rapidly enough to meet the planting schedule and allow the course to open on time. He also testified that defendants had the money to pay plaintiff in June but did not because the work was behind schedule. Welch stated that he had negotiated the contract with Spivey, and it was his understanding that the "Less 10%" notation indicated that "if we paid him by the due date, we would be entitled to a discount of ten percent." An employee of Rowan County Department of Environmental Services testified that he inspected the erosion control efforts at the course while plaintiff was still working, and that many of the erosion controls called for in the erosion plan were not in place. Other witnesses testified that the golf course was nowhere near completion at the time plaintiff left the job, and that it would not have been possible to plant in time for the course to open in the following year.

Upon close of all evidence, plaintiff made a motion for a directed verdict for the $135,000.00 for the June payment and the $91,000.00 for retainage pursuant to Rule 50 of the North Carolina Rules of Civil Procedure, on the ground that all the evidence showed that plaintiff did not abandon the job without excuse but rather for non-payment, and for a directed verdict on defendants' counterclaims. The trial court allowed the motion for a directed verdict on plaintiff's claim for $135,000.00, but denied the motion as to the $91,000.00 in retainage and for defendants' counterclaims. Also at the close of all evidence, defendants made a motion for a directed verdict on the question of plaintiff's claim for $91,000.00 in retainage, which was allowed. Defendants made a second motion for a directed verdict on all of plaintiff's remaining claims on the ground that plaintiff was an unlicensed general contractor and therefore not entitled to any recovery. The trial court denied the motion.

The remaining issues were submitted to the jury, which returned a verdict in favor of defendants on defendants' counterclaim for plaintiff's failure to install erosion controls, awarding damages of $47,000.00. The court entered its judgment on 3 October 1991, and defendants moved pursuant to Rule 59 of the North Carolina Rules of Civil Procedure for an order amending the judgment, claiming that newly discovered evidence showed that plaintiff had

no authority to transact business in North Carolina. The motion was denied.

---

The issues presented are whether (I) plaintiff is required by N.C.G.S. § 87-1 to be licensed as a general contractor; (II) plaintiff's substantial performance under the contract should have been submitted to the jury; (III) plaintiff misled defendants as to plaintiff's authority to transact business in this State, thereby excusing defendants' failure to assert such lack of authority prior to trial; and (IV) plaintiff has preserved for appellate review the issue of the propriety of the trial court's grant of defendants' motion for a directed verdict on their counterclaim.

I

[1] Defendants first argue that they were entitled to a directed verdict on plaintiff's claims on the ground that plaintiff did not have a license as required by N.C.G.S. § 87-1 and N.C.G.S. § 87-10, and was thus precluded from recovery. We disagree.

A contractor not licensed by the State of North Carolina pursuant to N.C.G.S. § 87-10 is, with certain exceptions not here material, prohibited from bidding upon, constructing or undertaking to superintend or manage "the construction of any building, highway, public utilities, *grading* or any improvement or structure where the cost of the undertaking is forty-five thousand dollars ($45,000) or more." N.C.G.S. § 87-1 (1989) (emphasis added) (amended in 1992 to reduce the amount to $30,000.00, N.C.G.S. § 87-1 (Supp. 1992)). A contractor in violation of this statute subjects himself to criminal penalties, N.C.G.S. § 87-13 (1989), and is precluded from suing the owner for breach of contract or in *quantum meruit. Brady v. Fulghum*, 309 N.C. 580, 582, 308 S.E.2d 327, 329 (1983).

Defendants argue that the work performed by plaintiff was "grading" as that term is used in N.C.G.S. § 87-1, and required "special skill" as that term is used in N.C.G.S. § 87-10. N.C.G.S. § 87-10(4) (1989). Therefore, defendants contend, plaintiff was required to have a general contractor's license. Because we do not read N.C.G.S. § 87-10 as expanding the definition of a general contractor beyond that as set forth in N.C.G.S. § 87-1, we address only the question of whether plaintiff was a general contractor under N.C.G.S. § 87-1. N.C.G.S. § 87-10 merely authorizes the State Licensing Board for General Contractors to classify the licenses

issued, pursuant to N.C.G.S. § 87-1, into one of five classifications, including a "[s]pecialty contractor." N.C.G.S. § 87-10(4).

It is not disputed that some leveling and smoothing of the land was necessary in the construction of the golf course. Therefore, some grading, as that term is used in N.C.G.S. § 87-1, was required. *American Heritage Dictionary* 570 (2d college ed. 1985) (to "grade" defined as "to level or smooth"). Construction of the golf course, however, involved much more than grading. The property required "clearing and grubbing"; "digging ponds"; construction of tee boxes, greens, and a driving range; the placement of drain tile; erosion control; seeding of grass; and piping of creeks. Thus, the grading of the land was only one of many types of work necessary in the construction of the golf course. It would, therefore, be incorrect to classify the entire construction of the golf course as grading.

In *C.C. Walker Grading & Hauling, Inc. v. S.R.F. Management Corp.*, our Supreme Court held that if "grading" is an integral "part of . . . work properly termed 'building and construction,'" a license is required to perform the grading work. *C.C. Walker Grading & Hauling, Inc. v. S.R.F. Management Corp.*, 311 N.C. 170, 180, 316 S.E.2d 298, 304 (1984). Assuming, therefore, without deciding, that construction of a golf course is "building and construction" as contemplated by *Walker*, because the grading was an integral "part of" the golf course construction, *see id.*, plaintiff was required to have a general contractor's license if the cost of the grading work was $45,000.00 or more.

In this case, there is no evidence as to what portion of the $1,100,000.00 contract was for the grading of the project, and to assign any value would require raw speculation. Because the record does not reflect that the grading had a cost of at least $45,000.00, the trial court correctly determined that plaintiff did not violate N.C.G.S. § 87-1 and was not therefore precluded from suing defendants.

Accordingly, plaintiff's lack of a general contractor's license was not a basis for denying its claim against defendants and the trial court was correct in denying defendants' motion for directed verdict on this ground.

II

[2] Defendants next argue that the trial court erred in allowing plaintiffs' motion for directed verdict, at the close of all the evidence,

on plaintiff's claim for $135,000.00, representing the 5 June 1990 payment of $150,000.00, less a ten percent retainage. Defendants argue that plaintiff was behind in construction and they therefore had no obligation to make the 5 June 1990 payment. Defendants further argue that because there existed evidence that plaintiff was behind in construction, which could show that plaintiff had not substantially performed its portion of the contract, the question of substantial performance should have been submitted to the jury. We agree.

"The first and simplest rule is that unless otherwise indicated by the agreement, a party who is to perform work over an extended period of time must substantially perform before he becomes entitled to payment." John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11-17 (3d ed. 1987) (footnotes omitted) [hereinafter *Calamari & Perillo*]. That is, "performance of the work is a constructive condition precedent to the duty to pay." *Id.* Whether there has been substantial performance of the contract is "ordinarily a question of fact." *Calamari & Perillo* at § 11-18(b) (footnote omitted).

In this case, it is not disputed that plaintiff stopped work on 28 June 1990, and that the golf course was not completed at that time. Although the contract is silent as to the date when plaintiff was to perform, there remains the question of whether plaintiff had substantially performed its promises under the contract as of 5 June 1990. There was evidence that the parties had agreed that the fairways would be seeded in June, 1990, and they were not. *See Calamari & Perillo* at § 11-18(a) (intent of parties to be gathered from instrument and the "surrounding circumstances"). Therefore, a jury question was presented on this issue, and entry of directed verdict for the plaintiff was error.

## III

[3] Defendants contend that the trial court erred in denying their Rule 59 motion to alter or amend the judgment. The basis of the motion was that plaintiff was not registered to do business in North Carolina, as required by N.C.G.S. § 55-15-02(a), thereby making plaintiff ineligible to recover in the courts of this State. Defendants further argue that their failure to bring this information to the trial court's attention prior to trial should be excused because plaintiff misled defendants about its registration status, and accord-

ingly the trial court should have deleted the $135,000.00 award to plaintiff.

Motions to amend judgments pursuant to N.C.G.S. § 1A-1, Rule 59 are addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of that discretion. *Strickland v. Jacobs*, 88 N.C. App. 397, 399, 363 S.E.2d 229, 230 (1988).

We note initially that both defendants and plaintiff in their respective briefs address the issue of whether N.C.G.S. § 55-15-02(a) should be applicable to this dispute in terms of whether plaintiff is "registered" in this State. N.C.G.S. § 55-15-02(a) provides that

[n]o foreign corporation transacting business in this State without permission obtained through a *certificate of authority* . . . shall be permitted to maintain any action or proceeding in any court of this State unless such corporation shall have obtained a certificate of authority prior to trial; . . .

An issue arising under this subsection must be raised by motion and determined by the trial judge prior to trial.

N.C.G.S. § 55-15-02(a) (1990) (emphasis added). It is true that the application for a certificate of authority is the mechanism whereby the foreign corporation must set forth the name of its registered agent and the address and county of its registered office, N.C.G.S. § 55-15-03(a)(5) (Supp. 1992), and that a certificate of authority will not be issued unless this requirement is complied with. N.C.G.S. § 55-15-03(c) (Supp. 1992). However, it is not registration which is required in order to maintain an action in the courts of this State, but permission to do business in this State, which must be evidenced by a certificate of authority. N.C.G.S. § 55-15-02(a). Defendants admit that they did not raise the issue of whether plaintiff had a certificate of authority prior to trial, but contend that they were prevented from doing so because plaintiff misinformed defendants by claiming that it did have authority to transact business in this State when in fact it did not.

The record reveals that defendants served interrogatories on plaintiff prior to trial, which plaintiff answered. Nowhere in these interrogatories do defendants ask whether plaintiff possessed a certificate of authority to transact business in the State. Among those interrogatories was the following:

(e) If and when the corporation was registered to do business in the State of North Carolina;

ANSWER: Not registered in North Carolina.

Thus, plaintiff never answered any question concerning whether or not it possessed a certificate of authority. In addition, plaintiff answered negatively the only question in the interrogatories for which a positive response might have tended to mislead defendants into believing that plaintiff was authorized to do business in North Carolina.

Defendants argue that the answers to other questions posed to plaintiff in interrogatories and in the deposition of Spivey were designed to mislead them, specifically plaintiff's claim that it filed a "Multi State Corporate Franchise and Income Tax Return" in North Carolina and paid the franchise taxes that resulted. Even assuming *arguendo* that these responses were false, they have nothing to do with whether plaintiff had obtained the proper certificate of authority to transact business in North Carolina. Defendants further argue that plaintiff's responses to interrogatories and deposition questions stating that plaintiff was registered to do business in South Carolina were also false, and misled defendants. Again, assuming *arguendo* that the responses were false, we can see no connection between plaintiff's corporate status in South Carolina and the requirement that it be properly authorized to do business in North Carolina pursuant to N.C.G.S. § 55-15-02(a). Defendants were therefore not misled by plaintiff about its possession of a certificate of authority, and defendants' failure to raise the issue of plaintiff's authority to transact business in North Carolina in a motion prior to trial, as required by N.C.G.S. § 55-15-02(a), precludes it from doing so in a motion after trial. Therefore, the trial court did not abuse its discretion when it denied defendants' Rule 59 motion to amend the judgment.

IV

[4] Plaintiff timely filed notice of appeal as to the granting of directed verdict for defendants on their counterclaim for $91,000. Plaintiff's appeal must be dismissed, however, because there is no proof of service of the notice of appeal on the other parties to the appeal, as is required by our Rules of Appellate Procedure. N.C. R. App. P. 26(b), (d) (1993); *Shaw v. Hudson*, 49 N.C. App. 457, 459, 271 S.E.2d 560, 561 (1980) (proof of service must appear

on or affixed to the notice of appeal); *Smith v. Smith*, 43 N.C. App. 338, 339, 258 S.E.2d 833, 835 (1979), *disc. rev. denied*, 299 N.C. 122, 262 S.E.2d 6 (1980) (requirement that record show timely service of notice of appeal is jurisdictional). Furthermore, the arguments made by plaintiff in support of its contentions are not properly presented as "cross-assignments of error" because they do not present "an alternative basis in law for supporting the judgment" from which defendants appealed. N.C. R. App. P. 10(d) (1993).

In summary: the judgment of the trial court decreeing that plaintiff have and recover of defendants the sum of $135,000.00, together with interest, is reversed and remanded for trial; the directed verdict for defendants on plaintiff's claim for $91,000.00 is affirmed; the denial of directed verdict for defendants on the ground that plaintiff did not have a general contractor's license is affirmed; and there is no error in the jury verdict for the defendants in the amount of $47,000.00.

Affirmed in part, reversed in part and remanded.

Chief Judge ARNOLD and Judge McCRODDEN concur.