JEREMY ANDRUS, PLAINTIFF v. IQMAX, INC., A FOREIGN CORPORATION, DEFENDANT

No. COA07-186

(Filed 6 May 2008)

**Statutes of Limitation and Repose— renewed promise to pay— emails not sufficiently definite**

The trial court properly entered summary judgment for defendant on a contract action on the ground that the action was barred by the statute of limitations where plaintiff pointed to an exchange of emails as an acknowledgment of the debt and a new promise to pay, but the emails did not manifest a definite and unqualified intention to pay the debt. N.C.G.S. § 1-26.

Appeal by plaintiff from order entered 7 December 2006 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 September 2007.

ANDRUS v. IQMAX, INC.

[190 N.C. App. 426 (2008)]

*Dozier, Miller, Pollard & Murphy, LLP, by Richard S. Gordon, for plaintiff-appellant.*

*Katten Muchin Rosenman LLP, by Jeffrey C. Grady and Christopher A. Hicks, for defendant-appellee.*

GEER, Judge.

Plaintiff Jeremy Andrus appeals from the trial court's order granting defendant IQMax, Inc. summary judgment. The sole issue presented by this appeal is whether the trial court properly concluded that Andrus' breach of contract claim is barred by the statute of limitations. Although Andrus acknowledges that he filed this action more than five years after sending his ultimately unpaid invoice, he contends that IQMax, in e-mails sent in 2005, acknowledged the debt and made a new promise to pay, thereby extending the time to collect his debt. Based upon our review of the e-mails between the parties, we hold that Andrus has failed to present evidence that IQMax, in its e-mails, "manifest[ed] a definite and unqualified intention to pay the debt." *American Multimedia, Inc. v. Freedom Distrib., Inc.*, 95 N.C. App. 750, 752, 384 S.E.2d 32, 34 (1989), *disc. review denied*, 326 N.C. 46, 389 S.E.2d 84 (1990). Without such a showing, any writing of IQMax is insufficient to renew the three-year statute of limitations. We, therefore, hold that the trial court properly granted IQMax summary judgment based on the statute of limitations.

## Facts

On 8 February 2000, Andrus and IQMax entered into a consulting agreement pursuant to which Andrus agreed to work with IQMax in improving its business plan for purposes of generating investment. The agreement specified (1) the scope of the services Andrus would perform, (2) that Andrus would be paid $125.00 per hour, and (3) that the parties estimated Andrus would spend 50 to 70 hours on the project. IQMax also made an initial payment to Andrus of $2,500.00.

Andrus provided consulting services from 9 February 2000 through 16 June 2000. On 27 December 2000, he sent IQMax an invoice for 120 hours of work with a total amount due of $15,000.00. IQMax did not pay the invoice. It now contends that it ultimately did not need Andrus to work on its business plan and that the initial $2,500.00 payment fully compensated Andrus for any services rendered.

ANDRUS v. IQMAX, INC.

[190 N.C. App. 426 (2008)]

Andrus did not immediately file suit. Sometime in 2005, however, Andrus contacted IQMax and requested payment of the $15,000.00 invoice. After a series of e-mails between Andrus and Paul Adkison, IQMax's chief executive officer, Andrus filed suit on 25 April 2006. When Andrus filed suit, it was almost six years after the last date he rendered services (16 June 2000) and was over five years from the date of the invoice (27 December 2000).

In its answer, IQMax asserted that Andrus' claim was barred by the applicable statute of limitations, N.C. Gen. Stat. § 1-52(1) (2007). On 22 November 2006, Andrus filed a motion for partial summary judgment on the statute of limitations issue, contending that the e-mails between Andrus and Adkison constituted a new promise to pay within the meaning of N.C. Gen. Stat. § 1-26 (2007). On the same day, IQMax also moved for summary judgment based on the statute of limitations. On 7 December 2006, the trial court granted IQMax's motion for summary judgment on the ground that Andrus' claim was barred by the statute of limitations. Andrus timely appealed that order to this Court.

## Discussion

"Although the statute of limitations on contract obligations is three years, a new promise to pay or partial payment of an existing debt may extend the time to collect the debt up to three years from the time of the new promise or partial payment." *Coe v. Highland Sch. Assocs. Ltd. P'ship*, 125 N.C. App. 155, 157, 479 S.E.2d 257, 259 (1997) (internal citation omitted). Our General Assembly has specified, however, that "[n]o acknowledgment or promise is evidence of a new or continuing contract, from which the statutes of limitations run, unless it is contained in some writing signed by the party to be charged thereby; but this section does not alter the effect of any payment of principal or interest." N.C. Gen. Stat. § 1-26. Appellate courts, in construing N.C. Gen. Stat. § 1-26, have held that the writing specified in the statute must: (1) show the nature and amount of the debt[1] and (2) " 'manifest a *definite* and *unqualified* intention to pay the debt.' " *Coe*, 125 N.C. App. at 157, 479 S.E.2d at 259 (quoting *American Multimedia*, 95 N.C. App. at 752, 384 S.E.2d at 34).

In this case, the parties do not dispute that there was a "writing," within the meaning of § 1-26, in the form of Adkison's e-mails. The

---

1. This requirement may also be met by a " 'distinct[]' " reference to a writing by which the nature and amount of the debt may be determined. *American Multimedia*, 95 N.C. App. at 752, 384 S.E.2d at 34 (quoting *Faison v. Bowden*, 72 N.C. 405, 407 (1875)).

ANDRUS v. IQMAX, INC.

[190 N.C. App. 426 (2008)]

parties also do not dispute that the e-mails were sent and received. The issue posed by this appeal is whether one or more of Adkison's e-mails comply with the test set forth in *Coe* and *American Multimedia*. Because we view the second element set forth in *Coe* as dispositive, we need not address whether Adkison's e-mails sufficiently show the nature and amount of the debt. Andrus argues that this case is controlled by *Coe*, while IQMax relies upon *American Multimedia*.

In *Coe*, the plaintiff performed electrical and plumbing work for the defendants, submitting invoices totaling $11,258.46. 125 N.C. App. at 156, 479 S.E.2d at 258. More than six months after completion of the work, the defendants' counsel sent a letter to the plaintiff explaining that in an effort to avoid bankruptcy, the defendant partnership was attempting to work out payment with all creditors. *Id.* The letter then stated:

> In an effort to avoid bankruptcy, the Partnership proposes to pay all creditors the principal amount in full due to them plus 6% interest. No attorneys' fees or late penalties will be paid. Payment will be made in two equal installments in March of 1992 and March of 1993. The Partnership also intends to give a promissory note secured by the property to each creditor. The funds to make the installment payments under the Partnership's proposal will be derived from syndication proceeds received by the Partnership over the next several years.

*Id.* The letter closed by requesting that the plaintiff sign the " 'appropriate response below.' " *Id.* at 157, 479 S.E.2d at 258. At the bottom of the page, there were two lines labeled " 'Accepted' " and " 'Rejected.' " *Id.* The plaintiff accepted the proposal, but the defendants failed to make the payments set forth in the proposal, and plaintiff brought suit. *Id.*

In concluding that the defendants' letter was sufficient to renew the statute of limitations under the *American Multimedia* test, the Court observed that "[t]he letter 'proposes' or offers to 'pay all creditors [including this plaintiff] the principal amount in full due to them plus 6% interest,' . . ., and to do so ('payments will be made') 'in two equal installments in March of 1992 and March of 1993.' " *Coe*, 125 N.C. App. at 157-58, 479 S.E.2d at 259. The Court held that "[t]his language manifests a 'definite and unqualified' intention to pay the debt." *Id.* at 158, 479 S.E.2d at 259.

ANDRUS v. IQMAX, INC.

[190 N.C. App. 426 (2008)]

In *American Multimedia*, the parties entered into an agreement on 30 October 1984, under which the defendant was required to pay the plaintiff $172,068.14. 95 N.C. App. at 757, 384 S.E.2d at 33. On 14 December 1984, the defendant sent the plaintiff a letter that stated in pertinent part: "We are budgeting our payment schedule now and plan to pay you $15,000.00 this month and every month up to June of 1985 of which [sic] we expect to pay the balance. Please review this statement and if you should have any questions do not hesitate to call me." *Id.* When the defendant failed to make the payments set out in the letter, the plaintiff filed suit within three years of the letter, but not within three years of the original agreement. *Id.* As in this case, the plaintiff argued that the December letter extended the statute of limitations. *Id.* at 752, 384 S.E.2d at 33.

This Court noted that the December letter "merely state[d] that 'we plan to pay' and 'we expect to pay' the debt." *Id.*, 384 S.E.2d at 34. The Court held that "[t]hese conditional expressions of defendant's willingness to pay the plaintiff are not sufficiently precise to amount to an unequivocal acknowledgment of the original amounts owed." *Id.* The Court held that the statements "at best demonstrate a willingness to pay based on defendant's ability to make the monthly payments" and, therefore, that "promise [was] insufficient to repel the statute of limitations." *Id.* at 753, 384 S.E.2d at 34.

In this case, Andrus points to his e-mail to Adkison on 17 October 2005, which stated: "Paul, wanted to follow up with you based on our conversation Friday. Can you confirm that the wheels are in motion on generating a $15k check for me? Thanks." The next day, Adkison replied: "Yes, I can. We will have to make payments to you so it won't be $15k upfront [sic]. I am working the details and will have this complete on Friday COB."

Andrus argues that "[b]y any rational reading" of his 17 October e-mail, "the plain meaning" was: " 'Are you going to pay me the $15,000.00 that you owe me?' " He then contends that "[t]o this blunt question, IQMax did not respond that it 'hoped to pay' or 'planned to pay' or 'expected to pay'. Rather, its response was: 'Yes, I can. . . .' " The flaw in Andrus' argument is that his e-mail did not ask the "blunt question," but rather asked whether Adkison could confirm that "the wheels are in motion" on generating a check. Adkison's affirmative response to the question simply agreed that "the wheels are in motion," but included the caveat that he was still "working the details."

On 28 October 2005, 10 days later, Adkison wrote in response to a further inquiry by Andrus: "I have a meeting with my CFO on Tuesday am to discuss. *I would anticipate this.* A letter stating our payment options with the first check then payments on a regular basis per the letter." (Emphasis added.) Later that same day, Adkison reported by e-mail to Andrus: "I got to speak with my CFO today (briefly) and *we are talking about* $2k now and then $2k per month for 6 months starting in January with the final payment being $3k." (Emphasis added.) Finally, Adkison e-mailed Andrus on 30 October 2005: "I need to get the paper work over to you sometime this week. Probably e-mail you can execute and fax back. Then we will send our executed version with a check."

We believe this case more closely resembles *American Multimedia* than *Coe*. Adkison's e-mails cannot be viewed as manifesting "a definite and unqualified intention to pay the debt." *American Multimedia*, 95 N.C. App. at 752, 384 S.E.2d at 34. Adkison confirmed that "the wheels [were] in motion" in getting Andrus a check, but added that he was still "working [on] the details." Subsequent e-mails, addressing the details, "anticipate[d]" possible payment options over time, but said only that Adkison and his chief financial officer were "talking about" a particular proposal. Adkison then indicated that he would provide the paperwork "sometime this week"—something that apparently did not happen. As in *American Multimedia*, we are confronted in the e-mails with "conditional expressions of defendant's willingness to pay the plaintiff"—statements "not sufficiently precise to amount to an unequivocal acknowledgment of the original amounts owed." *Id. See also Wells v. Hill*, 118 N.C. 900, 904-05, 24 S.E. 771, 772 (1896) (construing together four separate letters written by a debtor and holding that letters constituted "acknowledgment" of the subsisting debt, but that statements "running through all the letters" were no more than conditional promises to pay).

In contrast, in *Coe*, there was a concrete, unequivocal proposal to resolve the debt by specified payments over time. Had Andrus received "the paperwork," this case might then have fallen within the scope of *Coe*. The e-mail language upon which Andrus relies does not, however, provide the same degree of definiteness. *See also Johnson Neurological Clinic v. Kirkman*, 121 N.C. App. 326, 332, 465 S.E.2d 32, 35 (1996) (holding that debtor's statement that he " 'plan[ned] to re-file this on my insurance and [handle] the balance myself' " was not sufficiently definite and unqualified so as to extend the statute of

limitations). Accordingly, the trial court properly entered summary judgment in favor of IQMax on the ground that Andrus' action was barred by the statute of limitations.

Affirmed.

Judges BRYANT and STEELMAN concur.