**TRANTHAM v. MICHAEL L. MARTIN, INC.**

[228 N.C. App. 118 (2013)]

MARGARET TRANTHAM AND MARGERET TRANTHAM
EXECUTOR OF ESTATE OF GRADY TRANTHAM, PLAINTIFFS
v.
MICHAEL L. MARTIN, INC. N/K/A EQUITY MANAGEMENT, INC.; MICHAEL L. MARTIN,
INDIVIDUALLY; AND ROANOKE LAND COMPANY, INC.; DEFENDANTS

No. COA12-1160

Filed 18 June 2013

1. **Appeal and Error—preservation of issues—argument not raised at trial**

    An argument on appeal concerning lack of consideration in a real estate transaction was overruled where lack of consideration was not raised at trial.

2. **Fraud—constructive—confidential relationship—benefit**

    The trial court did not err in a constructive fraud claim arising from a real estate transaction by submitting constructive fraud to the jury. There was more than a scintilla of evidence to support the existence of a confidential relationship and sufficient evidence that defendant Martin individually received a benefit.

3. **Real Property—substitution of collateral—negligent misrepresentation**

    The evidence in a negligent misrepresentation claim arising from a real estate transaction was sufficient to submit to the jury where there was sufficient evidence that defendant Martin received a financial benefit from the substitution of collateral and that he prepared information given to plaintiffs without reasonable care.

4. **Unfair Trade Practices—real estate—constructive fraud**

    The trial court did not err by denying defendants' motion for a directed verdict on a claim for unfair and deceptive trade practices arising from a real estate transaction. The jury could consider constructive fraud and that conduct was sufficient to support an unfair and deceptive trade practices claim. Moreover, the business of buying and developing real estate is an activity in or affecting commerce for purposes of this claim.

5. **Statutes of Limitation and Repose—real estate transaction—multiple causes of action—activities extending time for filing complaint**

    The trial court did not err by denying defendants' motions for a directed verdict in several causes of action arising from a

substitution of collateral agreement in a real estate transaction where the motions were based on the statute of limitations. The applicable statutes of limitation were three and four years, and the time from the substitution agreement to the complaint was four years and eleven months. However, there was evidence of written promises to bring notes current and evidence of when plaintiffs learned that defendant had not disclosed that he was in arrears that was sufficient to extend the time for filing.

6. **Damages and Remedies—double recovery—corporate and individual defendant—remand for credit**

An award for damages in an action for breach of contract and other claims arising from a real estate transaction was remanded where the trial court reduced the judgments against the corporate and individual defendants, but all of the causes of action sought to make plaintiffs whole for the interrelated wrongs of losing the farm and not being paid. Plaintiffs were entitled to but one recovery; on remand, the judgment should be modified such that the amount paid by the corporate defendants is credited toward the judgment against the individual defendant.

7. **Appeal and Error—preservation of issues—authority not cited—argument not sufficiently developed**

Arguments on appeal for which authority was not cited and which were not sufficiently developed were overruled.

Appeal by defendants from judgment entered 27 February 2012 and amended judgment entered 10 May 2012 by Judge Bradley B. Letts in Henderson County Superior Court. Heard in the Court of Appeals 11 February 2013.

*Van Winkle, Buck, Wall, Starnes and Davis, PA, by W. James Johnson, for plaintiffs–appellees.*

*Hogan & Brewer, PLLC, by James W. Lee III, for defendants–appellants.*

MARTIN, Chief Judge.

Michael L. Martin in his individual capacity, Michael L. Martin, Inc. n/k/a Equity Management, Inc., and Roanoke Land Company, Inc. ("defendants") appeal from a judgment entered upon a jury's verdict finding all defendants liable for breach of contract and defendant Michael L.

Martin, individually, liable for constructive fraud, unfair and deceptive trade practices, and negligent misrepresentation.

The evidence at trial tended to show that Margaret and Grady Trantham owned approximately one hundred acres of farmland in Pickens County, South Carolina. The Tranthams purchased the farmland in 1972 following Grady Trantham's retirement after thirty-one years as a machine operator at the Champion Paper Mill in Canton, North Carolina. The Tranthams farmed the land, raising crops and livestock, until 1997 or 1998 when they decided they were too old to continue. The Tranthams placed the farm for sale and met defendant Michael Martin when he came to view the property.

Martin was a real estate broker with some considerable experience, having held a North Carolina real estate broker's license for over thirty years and having been "involved with approximately 100 seller-financing transactions during that time." In contrast, Grady Trantham attended school through the seventh grade, while Margaret Trantham completed the ninth grade and never worked outside the home. Martin and the Tranthams agreed to an owner-financed sale of the Pickens County property for $388,000.00. Martin structured the transaction through a series of notes and purchase money mortgages taken by multiple entities that Martin solely owned and controlled. As a licensed real estate broker, Martin also received a commission on the sale of the property.

Martin subdivided and developed the property, selling tracts to individuals. Defendants, however, soon fell behind on the monthly payments on the various notes. Martin made assurances to the Tranthams that he would eventually make the payments and bring current the arrearages. Throughout their dealings, Martin fostered a personal relationship with the Tranthams, visiting with them at their home. Martin summarized his relationship with the Tranthams in a 2008 letter he wrote to them, saying, "I continue to appreciate very much the confidence that you have always placed in me." Martin also handled all the accounting on the loans, providing periodic reconciliation statements to the Tranthams and documentation to their income tax preparer. Margaret Trantham testified that she and her husband Grady "trusted Mike [Martin]. We got to know him real well, and he was more like a friend. And we liked him. And we just trusted him."

In 2004, while still behind on payments to the Tranthams in excess of $60,000, Martin proposed in writing that the Tranthams release their remaining liens on the property, enabling him to sell the remaining lots. In exchange, Martin was to use the proceeds of the sale to "bring all

**TRANTHAM v. MICHAEL L. MARTIN, INC.**

[228 N.C. App. 118 (2013)]

arrearages and current sums due to [the Tranthams] current" and the Tranthams were to receive substitute collateral in the form of a second lien position on a warehouse in Hendersonville, North Carolina. Martin represented that the value of the warehouse was "in the range of $450,000" and the first lien was in the amount of $175,000, leaving $275,000 in equity. The Tranthams accepted the substitution of collateral agreement. Martin did not explain to the Tranthams the significance of the second lien position.

Martin also failed to disclose that he was in arrears on the warehouse's first mortgage at the time of the collateral substitution. In a 2007 email to an attorney for the first lien holder, Martin acknowledged the history of financial troubles with the property: "I have been in a catch 22 from the beginning with this property. It has been in rough shape, which impacts the rentability."

Following the substitution of collateral agreement, Martin made gross sales of all the remaining property totaling $362,297.00. However, Martin did not make payment to the Tranthams to bring the arrearages current, as contemplated in the agreement.

In February 2007, the holder of the first note on the warehouse property in Hendersonville called the note because of the continued arrearages on that property. Martin, acting through Roanoke Land Company, Inc., then took an assignment of the six original notes due to the Tranthams, purportedly to "defend them" and collect against the warehouse. The warehouse was ultimately foreclosed upon by the first lien holder and no additional monies were ever remitted to the Tranthams.

Grady Trantham died on 18 March 2011 and his estate was represented in this action through Margaret Trantham, who was ninety-one years old at the time of trial.

The jury's verdict awarded identical sums of $426,927.41 to plaintiffs for: 1) breach of the substitution of collateral agreement by Martin, individually; 2) breach of the promissory notes by Michael L. Martin, Inc.; 3) breach of the promissory notes by Roanoke Land Company, Inc.; 4) constructive fraud by Martin, individually; 5) unfair and deceptive trade practices by Martin, individually; and 6) negligent misrepresentation by Martin, individually. Defendants made a post-trial motion to, *inter alia,* alter or amend the judgment and attached a proposed judgment reducing the amounts owed by Michael L. Martin, Inc. and Roanoke Land Company, Inc. to $92,963.34 and $333,964.07, respectively, and assessing no liability to Martin, individually. In a 10 May 2012 amended judgment, the trial court entered judgment against Michael L. Martin, Inc. in the

amount of $92,963.34, and Roanoke Land Company, Inc. in the amount of $333,964.07. The trial court also entered judgment against Martin, individually, in the amount of $426,927.41, which was trebled pursuant to N.C.G.S. § 75-1.1. Defendants appeal.

---

Defendants first argue that the trial court erred by denying defendants' motion for a directed verdict with respect to each of plaintiffs' causes of action. "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 158, 179 S.E.2d 396, 398 (1971)). "In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant." *Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989). The non-movant is given "the benefit of every reasonable inference which may legitimately be drawn [from the evidence,] resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Id.* " 'A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim.' " *J.T. Russell & Sons, Inc. v. Silver Birch Pond L.L.C.*, __ N.C. App. __, __, 721 S.E.2d 699, 703 (2011) (quoting *Weeks v. Select Homes, Inc.*, 193 N.C. App. 725, 730, 668 S.E.2d 638, 641 (2008)).

Defendants argue the trial court erred by denying a directed verdict of plaintiffs' claim of breach of contract against Michael L. Martin, individually, because the contract was unenforceable for lack of consideration. However, at trial defendants argued the contract claim should be dismissed because "no evidence [has been] presented that [Martin] in any way signed in his individual capacity for those notes under the first cause of action." No argument was advanced nor mention made of consideration. " '[A]n appellate court will not consider grounds other than those stated to the trial court in reviewing the trial court's ruling on the motion.' " *Leatherwood v. Ehlinger*, 151 N.C. App. 15, 18, 564 S.E.2d 883, 886 (2002) (quoting *Stacy v. Jedco Constr., Inc.*, 119 N.C. App. 115, 123, 457 S.E.2d 875, 881, (1995)), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 368 (2003). Therefore, this argument is overruled.

Defendants next argue the trial court erred by denying their motion for a directed verdict as to the claim of constructive fraud. Specifically, defendants argue there was insufficient evidence to support the

TRANTHAM v. MICHAEL L. MARTIN, INC.

[228 N.C. App. 118 (2013)]

contention that there was a relationship of trust and confidence between the parties or that Michael L. Martin, individually, received a benefit from the substitution of collateral.

The elements of a claim of constructive fraud require: "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) (citing *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003)), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). " '[A]n essential element of constructive fraud is that defendants sought to benefit themselves in the transaction.' " *Sterner*, 159 N.C. App. at 631, 583 S.E.2d at 674 (quoting *State ex rel. Long v. Petree Stockton, L.L.P.*, 129 N.C. App. 432, 445, 499 S.E.2d 790, 798 (1998)). Whether a confidential relationship exists is typically a question of fact for the jury. *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 178, 684 S.E.2d 41, 53 (2009).

In this case, plaintiffs presented evidence that Martin was a savvy and practiced real estate broker with over thirty years' experience, having been "involved with approximately 100 seller-financing transactions during that time." The evidence showed that Grady Trantham only completed the seventh grade, while Margaret Trantham completed the ninth grade and never worked outside the home. Evidence was presented that Martin fostered a personal relationship with the Tranthams, visiting with them on occasion at their home. Plaintiffs presented evidence that Martin handled all the accounting on the loans, providing periodic reconciliation statements to them and documentation to their income tax preparer. Margaret Trantham testified that she and her husband Grady "trusted Mike [Martin]. We got to know him real well, and he was more like a friend. And we liked him. And we just trusted him." Plaintiffs also introduced a letter from Martin which referenced their relationship by saying, "I continue to appreciate very much the confidence that you have always placed in me." When viewed in the light most favorable to plaintiffs, we are satisfied that this evidence provided "more than a scintilla" of support for the existence of a confidential relationship, such that it was proper to submit the issue to the jury. *See J.T. Russell & Sons, Inc.*, __ N.C. App. at __, 721 S.E.2d at 703; *Davis*, 330 N.C. at 322, 411 S.E.2d at 138.

We are also satisfied that more than a scintilla of evidence was presented to support the contention that Michael L. Martin, individually, received a benefit from the substitution of collateral. Martin testified that he was "the only one that made any money from [Michael L. Martin,

Inc.]," that he was the sole owner, and that the company had no employees aside from him. He also testified the same was true for Roanoke Land Company. The evidence introduced showed the substitution of collateral agreement allowed defendants to make additional gross sales of $362,297.00, while not making any payment to the Tranthams to bring the arrearages current, as contemplated in the agreement. This evidence, when both viewed in the light most favorable to the plaintiffs and given "the benefit of every reasonable inference which may legitimately be drawn," was sufficient to submit the issue to the jury. *See Davis,* 330 N.C. at 322, 411 S.E.2d at 138; *Turner,* 325 N.C. at 158, 381 S.E.2d at 710. Therefore, this argument is without merit.

Defendants next argue the trial court erred by denying their motion for a directed verdict on the issue of negligent misrepresentation. Specifically, they argue insufficient evidence was presented that Michael L. Martin, individually, had a financial interest in the subject transaction or that the information allegedly supplied by Martin was false.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).

As addressed above, there was sufficient evidence that Martin received a financial benefit from the substitution of collateral agreement. Therefore, there was also sufficient evidence to show Martin had a financial interest in the subject transaction. The evidence was likewise sufficient to show that Martin prepared information without reasonable care. In writing, Martin represented that the property was worth $450,000 and that a first lien existed in the amount of $175,000, leaving an equity value of $275,000. Martin also indicated he "thought the warehouse was a better deal for the Tranthams" and a "win-win for [him] and the Tranthams . . . ." However, Martin testified at trial that the rental income on the property was insufficient to sustain even the debt owed to the first lien holder. Evidence was introduced that if all arrearages were brought current and the premises were fully occupied, the property would still produce a $1,200 negative monthly cash flow. Taking this evidence in the light most favorable to the plaintiffs and giving it "the benefit of every reasonable inference which may legitimately be drawn," we believe it was sufficient to submit the issue of negligent misrepresentation to the jury. *See Davis,* 330 N.C. at 322, 411 S.E.2d at 138; *Turner,* 325 N.C. at 158, 381 S.E.2d at 710. Therefore, this argument is without merit.

Defendants next argue the trial court erred by denying their motion for a directed verdict on the issue of unfair and deceptive trade practices. Specifically, defendants argue the alleged acts do not constitute unfair or deceptive trade practices and the alleged acts were not "in or affecting commerce."

"To prevail on a claim for unfair and deceptive trade practices, one must show: (1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Miller v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 295, 301, 435 S.E.2d 537, 542 (1993) (citing *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991)), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994).

Defendants assert Martin's alleged acts do not constitute unfair or deceptive trade practices. We disagree. "North Carolina case law has held that conduct which constitutes a breach of fiduciary duty and constructive fraud is sufficient to support a UDTP claim." *Compton v. Kirby*, 157 N.C. App. 1, 20, 577 S.E.2d 905, 917 (2003) (citing *Spence v. Spaulding & Perkins, Ltd.*, 82 N.C. App. 665, 668, 347 S.E.2d 864, 866 (1986)). Because we have already concluded the jury could properly consider a constructive fraud claim, this argument is without merit. *See id.* ("Because we have already held that the issue of constructive fraud was properly submitted to the jury, defendant's argument that the UDTP claim is improper must fail.").

Defendants also assert that the alleged acts were not "in or affecting commerce." N.C.G.S. § 75-1.1(b) defines "commerce" for UDTP claims: " '[C]ommerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b) (2011). "The business of buying, developing and selling real estate is an activity 'in or affecting commerce' for the purposes of [N.C.]G.S. § 75-1.1." *Governor's Club, Inc. v. Governor's Club Ltd. P'ship*, 152 N.C. App. 240, 250, 567 S.E.2d 781, 788 (2002) (citing *Wilder v. Squires*, 68 N.C. App. 310, 314–15, 315 S.E.2d 63, 65–66 (1984)), *aff'd per curium*, 357 N.C. 46, 577 S.E.2d 620 (2003).

In this case, considerable evidence was presented that defendants were engaged in the buying, developing, and selling of real estate. At plaintiffs' request, the trial court took judicial notice of a finding of fact from the order allowing foreclosure of the deed of trust on the warehouse property that "Michael Martin held a real estate license for approximately 30 years and is currently in the business of real estate financing, and has been involved with approximately 100 seller-financing

transactions during that time." The underlying transactions in this case involve the buying, developing, and selling of real estate. The substitution of collateral agreement states that its purpose was to "complete pending and proposed sales of all or part of [the remaining unsold land.]" Based upon the testimony received and exhibits presented, we are satisfied that more than a scintilla of evidence supports the "in or affecting commerce" element of the plaintiffs' claim, such that it was proper to submit the issue to the jury. *See J.T. Russell & Sons, Inc.,* __ N.C. App. at __, 721 S.E.2d at 703. Therefore, this argument is without merit.

Defendants next contend the trial court erred by denying their motions for a directed verdict on plaintiffs' causes of action for breach of contract, negligent misrepresentation, and unfair and deceptive trade practices based upon the applicable statutes of limitations.

"When a defendant pleads the statute of limitations in bar of a plaintiff's claim, the burden is upon the plaintiff to show that its suit was commenced within the appropriate time from the accrual of the cause of action." *Chase Dev. Grp. v. Fisher, Clinard & Cornwell, PLLC,* 211 N.C. App. 295, 304, 710 S.E.2d 218, 224 (2011) (citing *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985)). The statute of limitations for breach of contract and negligent misrepresentation is three years. *See* N.C. Gen. Stat. § 1-52 (2011). The statute of limitations for an unfair and deceptive trade practices claim is four years. *See* N.C. Gen. Stat. § 75-16.2 (2011).

Certain events may delay or extend the accrual of a cause of action. For example, in contract actions, a new promise to pay an existing debt may extend the time to collect the debt up to three years from the time of the new promise, provided however, the new promise must be in writing. *Andrus v. IQMax, Inc.,* 190 N.C. App. 426, 428, 660 S.E.2d 107, 109 (2008). "[A] claim for negligent misrepresentation does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation." *Guyton v. FM Lending Servs., Inc.,* 199 N.C. App. 30, 35, 681 S.E.2d 465, 470–71 (2009) (alteration in original) (internal quotations marks omitted). When an action for unfair and deceptive trade practices is "based on fraud, [the action accrues] at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence." *Nash v. Motorola Commc'ns & Elecs., Inc.,* 96 N.C. App. 329, 331, 385 S.E.2d 537, 538 (1989), *aff'd per curium,* 328 N.C. 627, 400 S.E.2d 36 (1991).

In this case, the substitution of collateral agreement was signed 4 November 2004 and the complaint was filed on 9 October 2009—more

TRANTHAM v. MICHAEL L. MARTIN, INC.

[228 N.C. App. 118 (2013)]

than four years and eleven months later. However, evidence was introduced at trial that tended to show Martin made written promises to bring the notes current on 9 March 2007, 4 February 2008, and 28 March 2008. These actions by Martin were sufficient to extend the time for filing a breach of contract cause of action such that the filing was timely in October 2009. *See Andrus,* 190 N.C. App. at 428, 660 S.E.2d at 109. Additionally, the evidence tended to show that Martin failed to disclose that he was in arrears on the warehouse's first mortgage at the time of the 4 November 2004 collateral substitution, and instead the Tranthams learned of the issue in 2007, once the foreclosure process was imminent. This later discovery was sufficient to delay the accrual of the action until 2007, which was within three years (and four years) of the date the complaint was filed in October 2009. *See Guyton,* 199 N.C. App. at 35, 681 S.E.2d at 470–71; *Nash,* 96 N.C. App. at 331, 385 S.E.2d at 538. Thus, the claims were not barred by the statutes of limitations.

Defendants next argue the trial court erred by not ruling on their objection to the jury instructions and issue sheet until after trial and also erred by denying in part their motion to alter or amend the judgment. Defendants contend the jury instructions, issue sheet, and amended judgment allowed for a double recovery and windfall to plaintiffs.

"[T]he trial court has wide discretion in presenting the issues to the jury and no abuse of discretion will be found where the issues are 'sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause.' " *Murrow v. Daniels,* 321 N.C. 494, 499–500, 364 S.E.2d 392, 396 (1988) (quoting *Chalmers v. Womack,* 269 N.C. 433, 435–36, 152 S.E.2d 505, 507 (1967)). "Motions to amend judgments pursuant to N.C.G.S. § 1A-1, Rule 59 are addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of that discretion." *Spivey & Self, Inc. v. Highview Farms, Inc.,* 110 N.C. App. 719, 728, 431 S.E.2d 535, 540, *disc. review denied,* 334 N.C. 623, 435 S.E.2d 342 (1993).

In general, plaintiffs are only entitled to one recovery for the same alleged wrongful conduct. *Decker v. Homes, Inc./Constr. Mgmt. & Fin. Grp.,* 187 N.C. App. 658, 666, 654 S.E.2d 495, 501 (2007).

> Where the same course of conduct gives rise to a traditionally recognized cause of action, as, for example, an action for breach of contract, and as well gives rise to a cause of action for violation of [N.C.]G.S. [§] 75-1.1, damages may be recovered either for the breach of contract, or for violation of [N.C.]G.S. [§] 75-1.1, but not for both.

*Marshall v. Miller,* 47 N.C. App. 530, 542, 268 S.E.2d 97, 103 (1980), *aff'd as modified by* 302 N.C. 539, 276 S.E.2d 397 (1981).

We first note the trial court did not delay ruling upon defendants' objection until after the trial. Rather, the trial court indicated during the charge conference that, "I will note the objection. I think that's something I would consider postjudgment if the jury does rule —," and then specifically overruled the renewed objection after the instructions were given to the jury. Additionally, it appears from the record before us the trial court properly reduced the judgment as to the two corporate defendants from $426,927.41 each, to $92,963.34 against Michael L. Martin, Inc. and $333,964.07 against Roanoke Land Company, Inc., avoiding a double recovery on the breach of the various promissory notes. The trial court also reduced the award against Martin, individually, from a combined $1,707,709.64 on four causes of action to $426,927.41. These causes of action were for breach of the substitution of collateral agreement, constructive fraud, negligent misrepresentation, and unfair and deceptive trade practices, which are separate from the breach of promissory notes by the corporate defendants. However, they arise out of the same series of transactions or course of conduct. Thus, all the causes of action seek to make the plaintiffs whole for the interrelated wrongs of both losing the farm and not being paid on the notes. Yet, plaintiffs are entitled to but one recovery. *See Murray v. Nationwide Mut. Ins. Co.,* 123 N.C. App. 1, 20, 472 S.E.2d 358, 368 (1996) ("[P]laintiff has set forth a panoply of causes of action arising from the same injury. We emphasize that plaintiff may recover for an injury but once."), *disc. review denied,* 345 N.C. 344, 483 S.E.2d 172–73 (1997).

Therefore, we remand this matter to the trial court and instruct the court to modify its judgment to reflect that any amount the corporate defendants pay on the combined $426,927.41 judgment against them be credited toward plaintiffs' properly trebled judgment of $1,280,782.23 against Martin, individually. *See Barbee v. Atl. Marine Sales & Serv., Inc.,* 115 N.C. App. 641, 650, 446 S.E.2d 117, 123 (ordering the trial court to modify its judgment to avoid a double recovery by crediting amounts paid by one defendant toward another defendant's judgment), *disc. review denied,* 337 N.C. 689, 448 S.E.2d 516 (1994).

Finally, defendants purport to argue the trial court erred in several additional ways. However, defendants cite no authority for these positions and do not sufficiently develop these arguments. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). Nor is it the duty of this Court to construct arguments for the parties on

appeal. *See Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Therefore, these remaining arguments are overruled.

No error in part, remanded in part with instructions.

Judges McGEE and CALBRIA concur.