J.T. RUSSELL AND SONS, INC., Plaintiff v. SILVER BIRCH POND L.L.C., Defendant

No. COA11-159

(Filed 6 December 2011)

**1. Appeal and Error—preservation of issues—objection waived—introduction of other evidence**

Plaintiff's hearsay objection was waived by the introduction without objection of evidence that was substantially the same in a contract action arising from a road paving project in a development.

**2. Construction Claims—paving project—directed verdict**

The trial court properly denied plaintiff's motion for a directed verdict in a contract action arising from a paving contract in a subdivision. Plaintiff contended that its paving work fully complied with the terms of the contract concerning the minimum thickness of the asphalt; however, the contract also had requirements for the thickness of the stone base and defendant provided sufficient evidence that plaintiff's paving work did not comply with this portion of the contract.

---

**3. Appeal and Error—preservation of issues—exceptional circumstances—erroneous damages award**

Failure to preserve an issue for appeal was waived where the jury's erroneous damages award provided the requisite exceptional circumstances.

**4. Damages and Remedies—award not supported by evidence— lump sum—remanded**

A damages award in a contract action was vacated and remanded where all of defendant's evidence about damages totaled an amount that was considerably less than the amount of the verdict. The award was a lump sum and it could not be determined which type of damages led to the erroneous award.

**5. Construction Claims—paving project in subdivision— damages—repairs—lost lot sales**

In a contract action involving paving within a subdivision in which no payment was required until after the work was completed, the determination of defendant's repair costs must include an offset of the contract price defendant had originally agreed to pay. Defendant would otherwise have received the paving for free. The measure of damages for lost lot sales must be measured by defendant's net profits.

Appeal by plaintiff from judgment entered 11 October 2010, *nunc pro tunc* 10 September 2010 by Judge W. Robert Bell in Stanly County Superior Court. Heard in the Court of Appeals 29 August 2011.

*Womble Carlyle Sandridge & Rice, PLLC, by Brent F. Powell and John F. Morrow, Jr., for plaintiff-appellant.*

*Crowe & Davis, P.A., by H. Kent Crowe, for defendant-appellee.*

*Hatch, Little & Bunn, LLP, by Harold W. Berry, Jr., for Carolina Asphalt Pavement Association, amicus curiae.*

CALABRIA, Judge.

J.T. Russell and Sons, Inc. ("plaintiff") appeal from a judgment entered upon a jury verdict finding that plaintiff breached a contract with Silver Birch Pond, L.L.C. ("defendant") and requiring plaintiff to pay $370,765.82 for this breach. We find no error in part and award plaintiff a new trial on the issue of damages.

J.T. RUSSSELL & SONS, INC. v. SILVER BIRCH POND, LLC

[217 N.C. App. 290 (2011)]

## I. Background

Plaintiff is an asphalt paving contractor located in Albemarle, North Carolina. Defendant is a real estate developer. On 14 December 2007, plaintiff and defendant entered into a contract ("the paving contract") whereby plaintiff agreed to pave the roadways in a residential subdivision, Silver Birch Pond ("the subdivision"), in Lincoln County.

According to the terms of the paving contract, plaintiff was required to "Furnish & Install 8" ABC Stone Base" and "Furnish & Install 1.5" SF9.5A Asphalt Pavement." The contract further stated that the "stone and pavement thickness are minimum NCDOT Lincoln County Standards." The estimated price for the paving job was $148,000.00, which was subject to change based upon variations in the price of asphalt liquid base.

Plaintiff installed the asphalt roadways in the subdivision on 18 April 2008. The following day, one of plaintiff's employees removed four core samples ("the JTR cores") from the subdivision in order to determine if they complied with North Carolina Department of Transportation ("NCDOT") standards. Testing revealed that the asphalt depth of the JTR cores was 1.75 inches, 2 inches, 1.5 inches, and 1.5 inches. The JTR cores were not tested for stone base thickness.

On 21 April 2008, Michelle Richards ("Richards"), an engineer with plaintiff's on-site engineering firm Boyle Consulting Engineers ("Boyle"), took four additional core samples ("the 2008 Boyle cores"). The asphalt thickness of the 2008 Boyle cores measured 1.52 inches, 1.61 inches, 1.52 inches, and 1.75 inches. Richards initially certified the 2008 Boyle cores as compliant with NCDOT requirements. However, Richards had mistakenly believed that only a six-inch stone base was required, and her certification reflected this mistake. Wright & Associates, the engineering firm overseeing the development of the subdivision, notified Richards of the mistake and requested that she provide the appropriate certification for an eight-inch stone base.

In May 2008, plaintiff sent defendant a bill for its completed paving services. The bill included a slight adjustment for an increase in asphalt prices, which was contemplated by the paving contract. With this increase, the bill totaled $152,870.96. Defendant refused to pay plaintiff. Consequently, on 25 September 2008, plaintiff initiated an action against defendant for breach of contract for failure to pay for plaintiff's asphalt paving. Plaintiff sought the total amount due under the contract plus interest. On 3 December 2008, defendant filed an answer and counterclaim against plaintiff for breach of contract.

Subsequently, Richards and Bob Townsend ("Townsend"), an NCDOT technician for Boyle, took seven additional sample cores on 23 January 2009 ("the January 2009 Boyle cores"). When tested, four of the sample cores had an asphalt thickness of less than 1.5 inches and two of the cores had a stone base of less than eight inches. These results led to a site meeting between Richards, Townsend, Wright & Associates engineer Miles Wright ("Wright"), Silver Birch owner Bob Johnson ("Johnson") and NCDOT district engineer Jackie McSwain ("McSwain"). At that meeting, it was determined that three additional core samples would be taken to determine if the subdivision complied with NCDOT specifications.

Townsend extracted these three additional core samples on 8 May 2009 ("the May 2009 Boyle cores"). Testing indicated that one of the May 2009 Boyle cores had an asphalt thickness of less than 1.5 inches and another core had a stone base of less than eight inches. At this point, Richards determined that she could not certify the roadways in the subdivision as complying with NCDOT specifications.

Nonetheless, Wright & Associates submitted a certification to NCDOT on 5 June 2009 indicating that the roadways met NCDOT specifications. The certification included Richards' certification of the asphalt depth from the 2008 Boyle cores. Shortly thereafter, Wright sent a letter to Johnson retracting his certification on the basis of the asphalt thickness tests that had been more recently conducted.

Beginning 7 September 2010, the case was tried by a jury in Stanly County Superior Court. During the trial, Johnson testified, over objection, that several NCDOT personnel had informed him that asphalt thickness depth is measured as a minimum over the course of an entire roadway. Richards also testified, without objection, that, based upon her familiarity with NCDOT guidelines, asphalt depth was measured as a minimum and not as an average of core samples.

Defendant presented evidence regarding its alleged damages. Johnson testified about the estimated costs of repair, engineering costs, and the problems he encountered in selling lots due to the problems with the asphalt. Richards testified about the additional engineering costs that would result from the process of repairing the road. Finally, Ryan Waddle ("Waddle"), the loan officer who was handling defendant's development loan, testified about the amount of interest defendant had paid since the paving job was completed.

On 10 September 2010, the jury returned a verdict finding that defendant had not breached the paving contract and that plaintiff had

breached the contract. The jury awarded defendant $370,765.82 in damages. Plaintiff appeals.

## II.  Johnson's Testimony

[1]  Plaintiff argues that the trial court erred by allowing Johnson to testify over a hearsay objection to a conversation he had with NCDOT personnel about minimum asphalt thickness. We disagree.

At trial, Johnson testified, over objection, that "more than one DOT person" told him that asphalt thickness "has to be a minimum . . . over the whole surface. It cannot be averaged out." Plaintiff contends that this testimony constituted inadmissible hearsay. However, Richards also testified, without objection, as follows:

> It is my understanding of the NCDOT that the stone thickness and the asphalt thickness is not an average, but a minimum. So if it says eight and an inch and a half, all the stones should be a minimum of eight, all the asphalt should be a minimum of an inch and a half. That's my interpretation, my understanding based on—I've done—I've done NCDOT certification roadways in nine different counties working under several—not just Jackie McSwain, but working with several other resident engineers. And that's always been their criteria, that it is a minimum standard.

Richards' testimony was substantially the same as Johnson's challenged testimony, and "it is the well-established rule that the admission of evidence without objection waives any prior or subsequent objection to the admission of evidence of a similar character." *Venters v. Albritton*, 184 N.C. App. 230, 240, 645 S.E.2d 839, 846 (2007). Accordingly, plaintiff has waived this argument, and it is overruled.

## III.  Directed Verdict

[2]  Plaintiff argues that the trial court erred by denying its motion for directed verdict. We disagree.

Initially, we note that plaintiff did not make a specific argument in conjunction with its motion for directed verdict. N.C. Gen. Stat. § 1A-1, Rule 50(a) (2009) expressly requires that "[a] motion for a directed verdict shall state the specific grounds therefore." Moreover, this Court has held that "[i]f the [trial] court denies a motion for a directed verdict which fails to state the specific grounds for the motion, the moving party may not complain of the denial on appeal." *Pergerson v. Williams*, 9 N.C. App. 512, 516, 176 S.E.2d 885, 888 (1970) (quoting 2B Barron and Holtzoff, Federal Practice and Procedure, § 1073, p. 370). However, our Courts have also stated that

J.T. RUSSSSELL & SONS, INC. v. SILVER BIRCH POND, LLC

[217 N.C. App. 290 (2011)]

"[a]lthough the provision in Rule 50(a) that a motion for a directed verdict shall state the specific grounds therefore is mandatory, the courts need not inflexibly enforce the rule when the grounds for the motion are apparent to the court and the parties." *Heist v. Heist*, 46 N.C. App. 521, 523, 265 S.E.2d 434, 436 (1980) (citing *Anderson v. Butler*, 284 N.C. 723, 202 S.E.2d 585 (1974)), *overruled on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998).

In the instant case, it was clear that the determinative issue was whether plaintiff's paving job complied with the terms of the paving contract, and thus, we may review the trial court's ruling in this context.

The standard of review for a motion for directed verdict is whether the evidence, considered in the light most favorable to the non-moving party, is sufficient to be submitted to the jury. A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim.

*Weeks v. Select Homes, Inc.*, 193 N.C. App. 725, 730, 668 S.E.2d 638, 641 (2008) (citation omitted). "[T]he court must consider even 'incompetent' evidence in ruling on a motion for a directed verdict." *Hart v. Warren*, 46 N.C. App. 672, 678, 266 S.E.2d 53, 58 (1980). "This Court reviews a trial court's grant of a motion for directed verdict *de novo*." *Weeks*, 193 N.C. App. at 730, 668 S.E.2d at 641.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005) (internal quotations and citation omitted). In the instant case, the parties do not dispute the existence of a valid contract. Rather, defendant claimed that plaintiff breached the paving contract by failing to "Furnish & Install 8" ABC Stone Base" and "Furnish & Install 1.5" SF9.5A Asphalt Pavement," as required by the contract.

Plaintiff contends that its paving work fully complied with the terms of the paving contract. Plaintiff makes three specific contentions that it believes entitles it to relief: (1) that all of the JTR cores and the 2008 Boyle cores complied with the contract; (2) that the January 2009 Boyle cores and the May 2009 Boyle cores were not extracted pursuant to NCDOT regulations and should have been discarded; and (3) that even if use of the 2009 cores was appropriate, the minimum thickness of core samples is not, under NCDOT guidelines, measured as an absolute minimum over the entire roadway. Under plaintiff's interpretation of these guidelines, the minimum thickness must be determined by averaging core samples to obtain an average minimum.

Each of plaintiff's arguments focus solely on the paving contract requirements regarding the thickness of the asphalt. Plaintiff fails to address the second requirement of the paving contract regarding the thickness of the stone base, and defendant provided sufficient evidence that plaintiff's paving work did not comply with this portion of the paving contract.

Neither the JTR cores nor the 2008 Boyle cores were tested to determine whether the stone base was the requisite eight inches thick. As a result, neither set of core samples could establish whether or not plaintiff complied with the stone base requirements in the paving contract. The first attempt to test the thickness of the stone base was the taking of the January 2009 Boyle cores, which were entered into evidence at trial. The stone base for these seven cores measured eight inches for only five of the core samples; the remaining two samples measured seven inches and seven-and-one-half inches, respectively. Thus, whether measured as individual minimums or as an average minimum over the seven cores, the stone base of the January 2009 Boyle cores measured less than eight inches thick as required by the contract. Therefore, these samples provided more than a scintilla of evidence regarding plaintiff's failure to comply with one of the terms of the paving contract. Accordingly, the trial court properly denied plaintiff's motion for a directed verdict and submitted defendant's breach of contract claim to the jury. This argument is overruled.

### IV.  Damages

Plaintiff argues that the jury's award of damages were contrary to law and should be vacated. We agree and award plaintiff a new trial on this issue.

### A.  Preservation

**[3]** Initially, we note that at trial, plaintiff did not object to any evidence regarding damages or to the jury instructions on damages. Plaintiff also failed to make a damages argument as part of its directed verdict motion. Moreover, plaintiff did not make a motion for judgment notwithstanding the verdict, a motion for a new trial on the issue of damages, or a motion for remittitur. Consequently, plaintiff has failed to properly preserve this issue for appellate review. *See* N.C.R. App. P. 10(a) (1) (2011).

However, in "exceptional circumstances," an appellate court may "take th[e] extraordinary step" of invoking N.C.R. App. P. 2 "when

necessary to prevent manifest injustice to a party or to expedite decision in the public interest." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008)(internal quotations and citations omitted). After reviewing the jury's damages award in the instant case, we conclude that the requisite exceptional circumstances exist to invoke Rule 2 and excuse plaintiff's failure to preserve this issue.

### B. Amount of Damages

[4] [D]amages are allowed for breach of contract as may reasonably be supposed to have been in the contemplation of the parties when the contract was made or which will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed[.]

*Weyerhaeuser Co. v. Supply Co.*, 292 N.C. 557, 560-61, 234 S.E.2d 605, 607 (1977) (internal quotations and citations omitted). "[T]he party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547-48, 356 S.E.2d 578, 586 (1987).

This Court has stated that

[o]ur courts recognize two methods of measuring damages in construction contract cases, both of which are intended to put the injured party in as good a position as if the contract had been fully performed. The first method . . . awards the injured party the cost of repair necessary to make the [construction] conform to the contract specifications. The second method awards the injured party the difference in value between the [construction] contracted for and the [construction] actually received.

*Kenney v. Medlin Const. & Realty*, 68 N.C. App. 339, 343-44, 315 S.E.2d 311, 314 (1984).

In the instant case, defendant was seeking recovery under the first method. The trial court instructed the jury that plaintiff was seeking "the reasonable costs to the defendant of labor and materials necessary to correct the asphalt paving services to bring it into conformity with the requirements of the contract" as direct damages. The trial court also instructed the jury that defendant was seeking the

"[c]osts of additional engineering tests at the request of the North Carolina Department of Transportation" as incidental damages and "[i]nterest payments made on a development loan and two lost lot sales" as consequential damages.

A comparison of the trial court's jury instructions with defendant's evidence at trial reveals that defendant's evidence did not support the full amount of the jury's verdict. Johnson testified as to defendant's direct damages. Specifically, he stated that it would cost $124,250.00 to repair the subdivision asphalt and an additional $11,310.00 to repair and reseed the sides of the roads. Richards testified that repairing the roadways would also require an additional $4000.00 in engineering costs.

For incidental damages, Johnson testified that defendant had paid Boyle $6502.82 to perform additional testing after plaintiff completed its paving work. For consequential damages, Waddle, the loan officer handling defendant's loan, testified that defendant had paid $72,017.29 in interest since the paving had been completed. In addition, Johnson testified that he had to return the deposit for a single lot which had been contracted to sell for $45,000.00. There was no specific testimony regarding a contract on a second lost lot sale, but Johnson testified that the typical selling price of a lot would be between $30,000.00 and $60,000.00. Johnson also testified about defendant's business plan and expected profits on other lots. However, as noted above, the jury was only instructed to find damages on two lots.

The result of adding together all of defendant's evidence regarding the damages which were included in the jury instructions would total, at most, $323,080.11. This total is considerably less than the amount of the jury's verdict. Since the damages award was a lump sum award which did not specify the amounts the jury awarded for direct, incidental, and consequential damages, we cannot determine which type of damages led to the jury's erroneous award. As a result, we must vacate the damages award and remand for a new trial on the issue of damages.

C.  Measure of Damages

[5] Plaintiff additionally argues that defendant's evidence of damages was not measured properly. "[T]he proper standard with which to measure . . . damages is a question of law." *Olivetti*, 319 N.C. at 548, 356 S.E.2d at 586. We agree with plaintiff that there were multiple

problems with the way in which defendant's damages were measured at the original trial that necessitate clarification of the appropriate standard.

First, the undisputed evidence at trial was that defendant was not required to pay anything on the contract until after plaintiff's work had been completed. As a result of this unusual arrangement, defendant has paid nothing to plaintiff for its paving work. Under these circumstances, awarding defendant damages for the costs of repairs to the asphalt would allow defendant to receive the asphalt paving for free. Such a result would fail to "put the injured party in as good a position as if the contract had been fully performed." *Kenney*, 68 N.C. App. at 343, 315 S.E.2d at 314. Instead, defendant would receive a windfall recovery in the form of free paved roads. Accordingly, on remand, the determination of defendant's repair costs must include an offset of the contract price defendant had originally agreed to pay.

In addition, the measure of damages for the two lost lot sales must be measured by defendant's net profits. *See Bowles Distributing Co. v. Pabst Brewing Co.*, 80 N.C. App. 588, 597, 343 S.E.2d 543, 548 (1986) ("[L]ost profits damages are usually defined as lost net profits, with all costs being deducted."). In the instant case, Waddle testified that under the terms of defendant's loan agreement, defendant was required to pay 85% of any lot sales towards its loan. Thus, the correct measure of defendant's lost profits on the two lots would be the 15% that defendant retained from the sale plus any corresponding benefit from the reduction of the loan principal.

## V. Conclusion

Plaintiff waived any hearsay objection to Johnson's testimony regarding his conversations with NCDOT personnel. Defendant presented more than a scintilla of evidence to support submitting defendant's breach of contract claim to the jury. Plaintiff failed to properly preserve appellate review of the jury's damages award. Nevertheless, since the full damages award was not supported by the evidence presented at trial and the damages may have been measured incorrectly, we waive plaintiff's failure pursuant to N.C.R. App. P. 2 and award plaintiff a new trial on the issue of damages.

No error in part and new trial in part.

Chief Judge MARTIN and Judge BRYANT concur.