An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-662
NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

J.T. RUSSELL & SONS, INC.,
     Plaintiff/Counterclaim-
     Defendant,

v.                                    Stanly County
                                      No. 08-CVS-1453

SILVER BIRCH POND, LLC,
     Defendant/Counterclaim-
     Plaintiff.


Appeal by defendant from order entered 31 October 2012 by Judge Theodore S. Royster, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 20 November 2013.

   *Womble Carlyle Sandridge & Rice, LLP, by Brent F. Powell, John F. Morrow, Jr., and David R. Boaz, for plaintiff-appellee.*

   *James, McElroy & Diehl, P.A., by Preston O. Odom, III, and The Jonas Law Firm, P.L.L.C., by Peter C. Capece, for defendant-appellant.*


   HUNTER, Robert C., Judge.


   Defendant-appellant Silver Birch Pond, L.L.C. ("SBP") appeals the order entered 31 October 2012 denying SBP's motion to amend its counterclaim and granting plaintiff's-appellee's J.T. Russell & Sons, Inc.'s ("JTR's") motion for summary

judgment. On appeal, SBP argues that the trial court: (1) erred by resolving the issue of damages on summary judgment because that ruling exceeded the scope of the appellate mandate; (2) abused its discretion in denying SBP's motion to amend its counterclaims; and (3) erred in granting JTR's motion for summary judgment. After careful review, we: (1) affirm the order denying the motion to amend; and (2) reverse the order granting summary judgment in favor of JTR because it violated the mandate of this Court in *J.T. Russell & Sons, Inc. v. Silver Birch Pond L.L.C.*, __ N.C. App. __, 721 S.E.2d 699 (2011) ("*Silver Birch I*"), and remand on the issue of damages.

## Background

This case is before this Court for the second time after a trial court has entered an order granting summary judgment for JTR. This Court's prior opinion contains a detailed recitation of the facts underlying this dispute. *See Silver Birch I*. JTR is an asphalt paving company. SBP is a North Carolina limited liability company formed by Robert Johnson ("Mr. Johnson") for the purpose of developing Silver Birch Pond, a planned residential subdivision, ("the subdivision") in Lincoln County. Although Mr. Johnson has built modular homes before, he has no prior experience in developing subdivisions. SBP and JTR

entered into a contract on 14 December 2007 whereby JTR agreed to pave the roadways in the subdivision for $148,000 ("the paving contract"). The amount of the contract was increased $4,870.96 based on a change order; consequently, the total price of the contract was $152,870.96.

JTR completed the work on 18 April 2008. However, SBP alleged that the work failed to comply with the stone base requirements in the paving contract. Specifically, SBP contended that, based on numerous stone base cores taken, the stone base of the roads measured less than the eight inches required by the paving contract. Consequently, SBP refused to pay the $152,870.96 it owed pursuant to the terms of the contract. JTR filed an action on 25 September 2008 against SBP alleging breach of contract. On 3 December 2008, SBP filed an answer and counterclaim against SBP, also alleging breach of the paving contract.

Beginning 7 September 2010, the case was tried by a jury in Stanly County Superior Court. On 10 September, the jury returned a verdict finding that SBP had not breached the contract and that JTR had breached the contract. The jury awarded SBP $370,765.82 in damages. JTR appealed.

-4-

On appeal, JTR argued, *inter alia*, that the trial court erred by denying its motion for a directed verdict and that the jury's award of damages was contrary to law and should be vacated. *Silver Birch I*, __ N.C. App. at __, 721 S.E.2d at 702-704. On the first issue, this Court concluded that because several of the core samples provided more than a scintilla of evidence that JTR failed to comply with the stone base terms of the paving contract, the trial court properly denied JTR's motion for a directed verdict. *Id*. at __, 721 S.E.2d at 703-704.

On the second issue of damages, JTR failed to preserve the issue for appellate review; however, the Court invoked Rule 2 to address the issue. *Id*. at __, 721 S.E.2d at 704. The Court noted that SBP was seeking three types of damages: (1) direct damages measured as the reasonable costs to SBP of labor and materials necessary to correct the asphalt paving services to bring it into conformity with the requirements of the paving contract; (2) incidental damages based on the costs of engineering tests done by the North Carolina Department of Transportation; and (3) consequential damages which consisted of the interest payments SBP made on a development loan and the lost profits on two lot sales. *Id*. at __, 721 S.E.2d at 704.

After comparing the jury instructions with the evidence at trial, this Court concluded that "[SBP's] evidence did not support the full amount of the jury's verdict." *Id*. Specifically, with regard to the direct damages, i.e., the "cost to fix" damages, the Court held that the direct evidence at trial only supported an award of $139,560. *Id*. For incidental damages, the evidence only supported an award of $6,502.82 paid to a consultant for testing on the asphalt roads. *Id*. at __, 721 S.E.2d at 704-705. With regard to SBP's interest payments on the loan, the evidence presented at trial supported an award of $72,017.29, as established by testimony by a loan officer handling SBP's loan. *Id*.

In sum, the Court concluded that the evidence supported an award "considerably less" than the jury's verdict. *Id*. Therefore, it vacated the damages award and remanded for a new trial on the issue of damages. *Id*.

**The Motion to Amend SBP's Counterclaims on Remand**

On remand, the trial court reopened discovery. After the discovery period was complete, on 17 October 2012, SBP moved to amend its counterclaims to request additional damages incurred, arguing that its "damages ha[d] changed significantly from the original trial in this matter." SBP drastically increased its

claim for lost profit damages and interest payments damages with these new damages falling into three basic types: lost profits, "homebuilder premiums," and interest payments. First, instead of only claiming lost profits based on the lost sales on two of the lots, SBP claimed lost profits for all 39 lots because, as Mr. Johnson averred, the bank foreclosed on the subdivision. Thus, SBP lost any and all potential revenues from selling lots in the subdivision. Second, SBP now claimed damages for lost "homebuilder premiums." Mr. Johnson alleged that he was also the principal of Willow Brook Homes, Inc., a company that constructs modular homes. Since the subdivision was a "closed development," each time someone purchased a lot from SBP, he would be required to purchase a modular home for that lot from Willow Brook. To pay off SBP's loan quicker, Willow Brook would pay SBP a "homebuilder premium" each time a sale was made—$20,000 for the first 10 lots, $15,000 for the next 10, $10,000 for the next 10, and $5,000 for the last dwellings sold. The total new amount of requested damages for lost profits was $1,137,906. Third, SBP requested additional damages for the interest payments made to the bank of $75,033.64. Finally, SBP now claimed an additional amount of $6,205.82 for additional

engineering fees to inspect the defective work (this on top of the original damages of $6,502.02).

In total, on remand, SBP sought to amend its counterclaim to request over $1.2 million in damages.

**JTR's Motion for Summary Judgment**

On 17 October 2012, JTR moved for summary judgment. Specifically, JTR argued the lost profits damages and damages related to the interest payments SBP made to the bank on its loan were not reasonably foreseeable and were overly speculative.

**The Hearing**

Both matters came on for hearing on 29 October 2012 before Judge Royster, Jr. After hearing from both parties, Judge Royster, Jr. noted that the Court of Appeals "vacated the jury's award of $371,000 and sent it back for retrial on [the] damage issue. The Court of Appeals affirmed the fact that the defendant is entitled to damages. So the trial is basically just on the amount of damages." With regard to SBP's motion to amend, the trial court denied it for two reasons. First, the trial court concluded that it should be denied because it was filed over four years after the initial counterclaim was filed.

Second, it should be denied due to the speculative and unforeseeable nature of the newly requested damages.

The trial court granted JTR's motion for summary judgment. Specifically, the trial court found that interest payments on the loan would be a "normal cost of doing business" and would not be foreseeable. Moreover, the trial court determined that the lost profit damages were too speculative. Thus, the trial court concluded that SBP failed to "produce a forecast of evidence that would demonstrate specific facts as opposed to allegations . . . . to show that they have at least a prima facie case to be tried." By doing so, the trial court dismissed SBP's claims; however, since JTR did not challenge SBP's claims for damages based on the cost it incurred for engineering tests in its summary judgment motion, these claims were to be dealt with at trial.

SBP appealed. After filing its notice of appeal, SBP voluntarily dismissed its claims for the engineering test damages.

**Arguments**

SBP argues that the trial court erred in denying its motion to amend its counterclaim. Specifically, SBP contends that

because a "post-appeal occurrence [] significantly altered what damages [it] can recover from JTR," the trial court abused its discretion in denying it. We disagree.

"A motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse." *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). "If the trial court articulates a clear reason for denying the motion to amend, then our review ends. Acceptable reasons for which a motion to amend may be denied are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." *NationsBank of N.C., N.A. v. Baines*, 116 N.C. App. 263, 268, 447 S.E.2d 812, 815 (1994) (internal quotation marks omitted).

Here, the record indicates that the trial court denied SBP's motion to amend based on undue delay and futility. During arguments, the trial court focused a great deal not only on the length of time that had elapsed between the initial paving work, approximately four years, but also on the foreseeability and the speculative nature of these new damages. If either of these

grounds exist, the trial court did not abuse its discretion in denying SBP's motion to amend.

Given the substantial amount of time that had elapsed between the filing of SBP's counterclaims and the motion to amend, the trial court's denial of the motion to amend was manifestly supported by reason. SBP filed its initial counterclaim in December 2008. The first trial occurred in 2010. After this Court reversed and remanded the judgment awarding damages to SBP back to the trial court in December 2011, SBP still did not move to amend its counterclaim until October 2012, almost four years after the initial counterclaims were filed and almost one year after remand. Moreover, we find that SBP's reasoning behind the delay is not compelling. Therefore, the trial court did not abuse its discretion in denying the motion to amend.

Next, SBP argues that the trial court erred since its action violated the appellate mandate. We agree.

It is well-established that an appellate mandate

> is binding upon the trial court and must be strictly followed without variation or departure. No judgment other than that directed or permitted by the appellate court may be entered. We have held judgments of Superior [C]ourt which were inconsistent and at variance with, contrary to, and modified, corrected, altered or reversed prior

> mandates of the Supreme Court . . . to be unauthorized and void.

*Lea Co. v. N.C. Bd. of Transp.*, 323 N.C. 697, 699, 374 S.E.2d 866, 868 (1989) (internal quotation marks and citations omitted). Thus, the issue is whether the trial court violated the *Silver Birch I* mandate.

In *Silver Birch I*, this Court addressed two issues. First, the Court noted that the trial court properly denied JTR's motion for a directed verdict and submitted the issue to the jury, noting that SBP "provided more than a scintilla of evidence regarding [JTR's] failure to comply with one of the terms of the paving contract." *Id*. at __, 721 S.E.2d at 703. Second, the Court held that the amount of damages awarded by the jury exceeded what the evidence would support. *Id*. at __, 721 S.E.2d at 705. Noting that the amount of damages was not supported by the evidence, this Court vacated the award and remanded for a new trial "on the issue of damages." *Id*. On remand, this Court also provided the trial court a formula with which to measure SBP's direct damages. *Id*.

While we acknowledge that a directive from an appellate court "[does] not render the Rules of Civil Procedure inapplicable" on remand, *see Britt v. Allen*, 37 N.C. App. 732, 733, 247 S.E.2d 17, 18 (1978), here, the trial court's dismissal

of SBP's claims by summary judgment is directly contrary to this Court's directive in *Silver Birch I* to hold a new trial on the issue of damages because this Court found that SBP was entitled to certain damages, even though the jury's award exceeded the evidence. In fact, the Court even provided the trial court with a formula on how to measure the direct damages. *Id.* at __, 721 S.E.2d at 705. Thus, when the trial court foreclosed on the possibility of SBP recovering any lost profit and interest payments damages, it violated this Court's determination that the evidence supported an award of damages, both of which were clearly articulated in this Court's opinion.

We find our Court's decision in *Metts v. Piver*, 102 N.C. App. 98, 101, 401 S.E.2d 407, 409 (1991), instructive. In *Metts*, the plaintiff filed a medical malpractice action against the defendants, and the defendants moved for summary judgment. *Id.* at at 99, 401 S.E.2d at 408. The trial court granted summary judgment, and the plaintiff appealed. *Id.* On appeal the first time, this Court reversed the order granting summary judgment in favor of the defendant, concluding that there was a genuine issue of material fact as to whether the defendants were negligent. *Id.* On remand, the defendants again moved for summary judgment, and the trial court granted the motion. *Id.*

On appeal the second time, this Court found that the trial court's "ruling on the existence of a genuine issue of material fact [on remand] is directly contrary to our earlier holding." *Id*. at 100, 401 S.E.2d at 408. Thus, the Court reversed the order and remanded for trial. *Id*. at 101, 401 S.E.2d at 409.

Similarly, here, since this Court ordered a new trial on the issue of damages and provided a formula with which to measure those damages, the trial court's conclusion that there was no issue of material fact with regard to SBP's claim for lost profit damages and damages based on interest payments SBP made on its loan conflicted with this Court's decision in *Silver Birch I* that the evidence supported an award of direct and consequential damages. Although this Court concluded that the amount of damages awarded exceeded the amount of damages supported by the evidence in *Silver Birch I*, it affirmed that SBP was entitled to some lost profit damages, damages based on SBP's interest payments, and direct damages.[1] Moreover, the trial court reiterated this point at the hearing on JTR's motion

---

[1] In addition, this Court held that SBP was entitled to $6,502.82 in incidental damages based on payments SBP made to a consultant to test the roads. *Silver Birch I*, __ N.C. App. at __, 721 S.E.2d at 704-705. However, after the trial court granted JTR's motion for summary judgment, SBP voluntarily dismissed its claim for incidental damages. Therefore, we need not discuss these damages on appeal.

for summary judgment when it noted that: "The Court of Appeals affirmed the fact that the defendant is entitled to damages." Thus, as in *Metts*, we reverse the trial court's order granting summary judgment and remand for trial on the issue of damages.[2]

Next, we will determine what damages SBP will be entitled to on remand. In the original trial, the trial court instructed the jury that the direct damages were "the reasonable cost to [SBP] of labor and materials necessary to correct the asphalt paving services to bring it into conformity with the requirements of the contract." *Silver Birch I*, __ N.C. App. at __, 721 S.E.2d at 704. This Court specifically found that the evidence at trial supported an award of $139,560 in direct damages—$124,250 to repair the subdivision asphalt, $11,310 to repair and reseed the sides of the roads, and $4,000 in additional engineering costs. *Id*. Since "the cost of repairs required to bring the property into compliance with the warranty or contract" is a proper method of measuring damages for defects in construction contracts, *Warfield v. Hicks*, 91 N.C. App. 1, 11, 370 S.E.2d 689, 695 (1988), SBP is entitled to $139,560 in direct "cost to fix" damages. However, given that SBP has not

---

[2] Since we are reversing the trial court's order granting summary judgment, we need not address SBP's final argument regarding the merits of summary judgment.

paid JTR for its work on the contract, *Silver Birch I*, __ N.C. App. at __, 721 S.E.2d at 705, these damages must be offset by the value of the work performed by JTR for SBP so that SBP does not receive a windfall recovery. *See id*. Therefore, SBP would owe JTR $13,310.96—the amount of the contract price of $152,870.96 less the amount of the "cost to fix" direct damages of $139,560. Under this measure of damages, SBP will get the work it contracted for and will pay the price it contracted for, $152,870.96.

Furthermore, SBP would be entitled to the lost profits on two of the lots and damages based on the interest payments SBP made on its loan. "[L]ost profits damages are usually defined as lost net profits[.]" *Stan D. Bowles Distrib. Co. v. Pabst Brewing Co.*, 80 N.C. App. 588, 597, 343 S.E.2d 543, 548 (1986). Accordingly, the jury must determine what SBP's net profit on each of the two lost lot sales would be measured in accordance with this opinion. Furthermore, as stated by this Court in *Silver Birch I*, SBP is entitled to damages based on the interest payments SBP made to the bank on its loan. The *Silver Birch I Court* held that the amount of the interest payments supported by the evidence was $72,017.29. *Silver Birch I*, __ N.C. App. at

__, 721 S.E.2d at 705. Thus, any damages must include the $72,017.29 for the interest payments SBP made.

**Conclusion**

In summary, we affirm the trial court's order denying SBP's motion to amend its counterclaims on the basis of undue delay. However, we reverse the order granting summary judgment in favor of JTR and remand on the issue of damages in accordance with this opinion. The trial court must award $72,017.29 to SBP, the amount of interest payments that SBP made on its loan to the bank. Second, with regard to the cost to fix damages, while SBP is entitled to $139,560, the amount it would cost to fix the roads which was established by the evidence in the original trial, this amount must be offset by the value of the work performed by JTR based on the contract price since SBP has not paid anything to JTR for its work. Accordingly, JTR would be entitled to $13,310.96—the amount of the contract price, $152,870.96, less the amount of the "cost to fix" direct damages, $139,560. Finally, the lost profit damages for two lots is a question for the jury to determine in accordance with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED ON THE ISSUE OF DAMAGES.

Judges CALABRIA and HUNTER, JR., ROBERT N. concur.

Report per Rule 30(e).