An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-659

Filed 3 June 2026

New Hanover County, No. 22CVS004378-640

108 GRACE, LLC, Plaintiff,

v.

RIVERBEND #1, LLC, Defendant.

Appeal by Plaintiff from judgments entered 7 February 2025 and 26 March 2025 by Judge Quintin McGee in New Hanover County Superior Court. Heard in the Court of Appeals 26 February 2026.

> *Equitas Law Partners LLP, by Thomas S. Babel and Corrie Faith Lee, for the Plaintiff-Appellant.*
>
> *Murchison, Taylor & Gibson, PLLC, by Andrew K. McVey and John H. Anderson, Jr., for the Defendant-Appellee.*

WOOD, Judge.

108 Grace, LLC ("Plaintiff"), appeals from judgment entered following a jury verdict and subsequent judgment entered denying its motion for judgment notwithstanding the verdict ("JNOV") or in the alternative a new trial or amendment to judgment. On appeal, Plaintiff argues the trial court erred by denying its motion

for a directed verdict, overruling its objection to a jury instruction, and denying its motion for JNOV or in the alternative for a new trial or amendment to judgment. For the reasons stated herein, we affirm the trial court's judgments.

## I.    Factual and Procedural Background

In 2015, Riverbend #1, LLC ("Defendant") initiated negotiations to purchase a parking lot ("Property") from Plaintiff. Plaintiff operates as an entity to buy and hold real estate; the Property was utilized by Louis Allen Ross ("Ross"), a marketeer of plastic and glass laboratory supplies for analytical chemistry instruments, as parking for himself, visiting customers, and visiting suppliers. The Property contains fourteen parking spaces, but allegedly could be configured for more. Defendant sought to acquire the Property and other real estate surrounding it to build a Publix grocery store and parking deck. On 31 December 2015, James Kirkpatrick ("Kirkpatrick"), the sole member of Defendant, electronically signed a purchase agreement ("Contract") for the Property on behalf of Defendant; Ross signed on behalf of Plaintiff as Member Manager. Parties used North Carolina Realtors' Standard Form 580-T, consisting of eight pages, as the template for the Contract. Plaintiff purports the Contract includes an additional page of terms of the agreement labeled "Exhibit B." During negotiations each party was represented by a real estate agent; Michael Rokoski ("Realtor Rokoski") represented Defendant and Todd Toconis ("Realtor Toconis") represented Plaintiff.

On 29 January 2016, a general warranty deed was recorded transferring the

Property from Plaintiff to Defendant. Defendant never developed the Property and Plaintiff continued to use it as it had prior to the transfer of title. In 2022, Plaintiff learned Defendant planned to sell the Property and other surrounding parcels to New Hanover County ("County").

After learning about the impending sale of the Property, Plaintiff filed a notice of *lis pendens* on the Property seeking to recover "the twenty-two (22) parking spaces [from Defendant] as agreed to in the [Contract]" ("Parking Rights") on 30 December 2022. On 13 January 2023, Plaintiff filed a complaint against Defendant alleging breach of contract and requesting specific performance. Plaintiff alleged the Contract entered into on 31 December 2015 incorporated the terms and conditions set forth in "Exhibit B," thus, under the terms of the Contract:

> Defendant agreed to provide to Plaintiff a lease for "twenty-two (22) parking spaces" on the Property. The lease was for parking spaces in a parking structure that was to be built by Defendant on the Property and the term of the lease was for a "term of ninety-nine years, subject to three automatic renewal extensions for a period of ninety-nine years each." During the time period before the parking structure was built, Defendant agreed to allow Plaintiff "exclusive and continuous use of the Property" and "if during construction overlap Buyer will pay for Seller's parking up to 22 spaces short term in the public deck if Buyer cannot provide comparable parking during construction."

The complaint further alleged that the Contract included for the Parking Rights to be "included as a restriction in the vesting deed to Buyer." However, no restrictions were included in the 29 January 2016 deed which transferred title.

Plaintiff alleges that on or about 22 November 2022, counsel notified Defendant of the omission of the Parking Rights in the deed and requested a new deed or other instrument be recorded to correct the omission and protect Plaintiff's Parking Rights as set out in Exhibit B. Plaintiff asserts it filed the *lis pendens* and the complaint because it was under the belief Defendant would not correct the alleged error. Plaintiff attached a copy of the Contract and Exhibit B to the complaint; this copy of Exhibit B contains an electronic signature purportedly belonging to Kirkpatrick timestamped within minutes of the electronic signatures on eight pages of the Contract.

On 6 February 2023, Plaintiff filed its first amended complaint adding a second cause of action for a declaratory judgment asserting Plaintiff was entitled to a declaration that "(a) the Contract, and the lease therein, is a legally enforceable agreement; (b) Plaintiff has the Parking Rights; and (c) Defendant has an obligation to record a memorandum of lease, deed restriction, easement, and other encumbrance on the Property whereby the Parking Rights are protected."

On 16 February 2023, Defendant filed a motion to cancel notice of *lis pendens* alleging that Exhibit B was not part of the Contract, Exhibit B was not executed under seal, and the applicable statute of limitations has run. Further, Defendant alleged "[t]here currently is no parking structure on the property. Thus, there is no lease in effect and, if Plaintiff's contentions are wholly accepted by the Court as true, what Plaintiff currently has is nothing more than a right to use the property of

unspecified duration." Defendant further asserts Plaintiff's counsel prepared the deed that transferred title, thus, it was Plaintiff's responsibility to include the restrictions contained in Exhibit B in the deed.

On 13 March 2023, Plaintiff filed a second amended complaint to include additional factual allegations and that Defendant has "breached, or *anticipatorily breached*, the Contract." On 15 March 2023, the trial court entered an order denying the motion to cancel *lis pendens* and certified it as affecting a substantial right. On 3 April 2023, Plaintiff filed a motion to amend its complaint after Defendant objected to the filing of the second amended complaint. The motion states that on 28 March 2023 parties conducted early mediation but concluded in an impasse. Plaintiff's motion to amend was granted.

In April 2023, Defendant and the County executed an amendment to their initial purchase agreement which carved out the Property from the other parcels considered in the sale and added a five-year option to purchase the Property. This amendment and option to purchase agreement came as a result of the pending dispute and the *lis pendens* Plaintiff had filed.

On 17 May 2023, Defendant filed its answer to the second amended complaint which included a motion to dismiss pursuant to Rule 12(b)(6) and motion for judgment on the pleadings pursuant to Rule 12(c). Defendant asserted the following defenses: (1) statute of limitations; (2) statute of frauds; (3) no meeting of the minds in regard to the restrictions in Exhibit B; (4) failed contingency in regard to Exhibit

B; (5) no consideration in regard to Exhibit B; (6) Exhibit B was a gratuitous unenforceable promise; (7) adequacy of remedy at law; (8) no causation; and (9) the merger doctrine. Specifically, Defendant denied that "Exhibit B forms the parties' contract and further denies that the parties entered into a lease."

On 15 October 2024, Defendant filed a motion for summary judgment and attached an affidavit from Kirkpatrick and other materials offered in support of its motion for summary judgment. Attached materials included: Plaintiff's response to Defendant's first set of interrogatories and request for production of documents; Defendant's response to Plaintiff's first set of interrogatories and request for production of documents; and deposition transcripts from Realtor Rokoski, Ross, and Kirkpatrick. In his affidavit, Kirkpatrick alleged in part:

> 9. I have no recollection whatsoever of executing this addendum [Exhibit B] to the Contract, and it would have been foolish for me to do so. Regardless of whether I did or did not, this purported restriction on the use of the Property did not find its way into the vesting deed by which [Defendant] acquired title to the Property, recorded on January 29, 2016. . . .
>
> 10. I literally heard nothing further about this purported contract provision until the filing of this lawsuit approximately seven years later.
>
> 11. Notably, although I considered constructing a parking structure farther up the block, [Defendant] never, ever contemplated constructing a parking structure on the Property.
>
> 12. Ultimately, I decided to abandon the Publix project. Regrettably, I could not make it work.

. . .

14. In 2022, [Defendant] went under contract to sell basically all of the real estate comprising the city block, including the Property, to New Hanover County, for use as a nursing school campus by Cape Fear Community College.

15. The sale was well-publicized by the media in the area.

Kirkpatrick attached a copy of the Contract, without Exhibit B, to his affidavit and a copy of the general warranty deed transferring title of the Property. On 21 October 2024, Plaintiff filed a motion for summary judgment.

The motion came on for hearing on 5 November 2024, and on 25 November 2024, the trial court entered an order denying Plaintiff's and Defendant's motions for summary judgment because genuine issues of material fact existed and also specifically concluded that Plaintiff's claims were not time-barred because the "breach only became knowable in the fall of 2022 when Plaintiff was made aware of the sale of the property at issue."

On 13 January 2025, the trial court entered an order following a pre-trial conference containing stipulations to undisputed facts, lists of known exhibits and witnesses each party may offer at trial, and lists of contested issues each party contends should be tried by the jury; trial began the same day. Ross, Realtor Toconis, Kirkpatrick, Realtor Rokoski, and Attorney Justin Lewis testified on behalf of Plaintiff. At the close of Plaintiff's evidence, Defendant made a motion for directed verdict and asserted that, in its view, the case had three issues: (1) contract

formation, (2) breach in the event the jury determines there was formation of the contract, and (3) damages. The trial court denied Defendant's motion for directed verdict. Defendant did not present any evidence. At the close of all evidence, Plaintiff made a motion for directed verdict, but made no argument in support of its motion; the trial court denied the motion.

At the start of the charge conference, the trial court outlined the three issues it believed the case presented: (1) whether there was formation of a contract; (2) if there was formation, whether the contract was breached; and (3) damages. The parties debated how to form the first issue and instruct the jury. Plaintiff proposed issue one read, "did Plaintiff 108 Grace and Defendant Riverbend #1, LLC, enter into a contract on December 31st, 2015?" Defendant disagreed and argued there was "no doubt that there was a contract entered into," and that "the real issue is whether or not the contract that was entered into included the terms that are [] on Exhibit B."

Plaintiff asserted, "Exhibit B is part of the contract. It's not two separate contracts." Defendant disagreed and argued that was an issue for the jury to decide. Further discussion on the issue occurred:

> DEFENDANT'S COUNSEL: Whether [Exhibit B] was agreed to as part of the contract. I mean, there's been testimony about whether or not it was knowingly signed. And there will be arguments about whether, you know, the terms of Exhibit B fit the requirements of the law that you'll instruct them on with respect to formation of contracts. I mean, that's what this whole case has been about is whether or not Exhibit B was intended to be part of the deal.

PLAINTIFF'S COUNSEL: Your Honor, what was just said is exactly an issue that would confuse the jury. The law is clear. He doesn't have to read - - the unknowingly, that's what I'm grasping on. His testimony was I didn't read [Exhibit B]. That's not a defense. The law is clear. If you sign a contract - - or sign any written document, it's implied by law that you read it.

So knowingly is not a defense of formation. It's whether he accepted, period. As you put in the pattern jury instructions. The way I see it is I agree. The jury has to determine what the terms are. And they will do that at the time when they determine whether there was a breach.

. . .

THE COURT: I still think you can - - he can make that argument whether the language is did the plaintiff and defendant enter into a contract with respect to the terms of - - set forth in Exhibit B? Or whether the issue reads did the plaintiff and defendant enter into a contract? I mean, we're still talking about one contract whether it - - you can still make the same argument.

DEFENDANT'S COUNSEL: But, Your Honor, it doesn't really get to that. I mean, the property was conveyed. There was - - you know, I mean, there - - the testimony has been that he didn't - - he doesn't recall signing the contract. He's told the jury he wouldn't have knowingly signed the contract. And whether or not they were on the same page as to whether there was a meeting of the minds, well, on Exhibit B and what the intent of what's written on Exhibit B is, that's an issue for the jury.

And its going to - - it's going to be prejudicial enough where the jury - - if all they're asked is did they enter into a contract, that is - - that is too easy. It is not what is at issue in this case. The issue is whether or not a contract was made with respect to the terms of Exhibit B and what is required of that.

The trial court ultimately agreed with Defendant and issue one on the verdict sheet

read, "Did the plaintiff and the defendant enter into a contract with respect to the terms set forth in Exhibit B?" On 17 January 2025, the jury returned their verdict of "NO" on issue one and, thus, did not reach issues two and three.

On 10 February 2025, Plaintiff filed a motion for JNOV or in the alternative a new trial or amendment of the judgment. Plaintiff asserted in part:

> 6. Based on the evidence admitted during the trial, Plaintiff's Motion for Directed Verdict should have been granted in favor of Plaintiff and a verdict and judgment should have been granted in favor of Plaintiff. The evidence admitted during the trial proved that the contract between parties was executed by Defendant, the terms of Exhibit B, where incorporated into the agreement, Exhibit B was executed by [Defendant], and the actions of the parties after execution of the contract evidenced the mutual assent of the parties. Pursuant to the contract, the property was conveyed to Defendant, thereby evidencing adequate consideration. Defendant breached the [Contract], anticipatorily or otherwise, by attempting to sell the property, by entering an option agreement to sell the property, and by refusing and failing to provide the agreed upon parking spaces to Plaintiff. Plaintiff presented evidence of the damages caused by the breach, which was not refuted by any evidence admitted by Defendant. Accordingly, Plaintiff respectfully requests that the Verdict and Judgment be set aside by the Court and Judgment be granted in favor of Plaintiff.
>
> 7. In the alternative, Plaintiff respectfully requests a new trial on the basis that there was insufficient evidence to support the Verdict and Judgment and that jury instructions as to Issue No. 1 was improper and an error in law. As set forth above, there was insufficient evidence to support the jury's Verdict as to Issue No. 1. In addition, Issue No. 1 asked the jury as to whether there was a contract between the parties in regard to exhibit B. This instruction was improper and misled the jury because the

cause of action set forth in the Second Amended Complaint was that there was a breach of the contract. No party contended that exhibit B was a separate contract, and there was no evidence admitted during the trial as to this contention. The jury instruction should have asked the jury whether there was a contract between the parties not whether the parties had a contract in regard to exhibit B. The jury instruction as to Issue No. 1, therefore, conflicted with the evidence presented to the jury, confused and misled the jury as to what was the issue for consideration, and instructed the jury to consider an issue that was an error in law. Therefore, the Verdict was not supported by the evidence and was improper. Plaintiff should, therefore, be granted a new trial.

The trial court heard arguments on Plaintiff's motion for JNOV on 10 March 2025 and entered its order denying the motion on 26 March 2025. On the same day, the trial court heard arguments and entered its order granting Defendant's motion for award of costs other than attorney's fees; the trial court awarded Defendant $2,440.65 for recoverable mediator and deposition related costs. Plaintiff filed notice of appeal on 11 April 2025.

## II. Analysis

Plaintiff makes three arguments on appeal. First, Plaintiff argues the trial court erred by denying its motion for directed verdict. Second, Plaintiff argues the trial court erred by overruling its objection to the jury instruction on the issue of contract formation, alleging "issue one" misled the jury by treating Exhibit B as a separate contract. Third, Plaintiff argues the trial court erred by denying its motion for JNOV and motion for a new trial on the grounds that uncontested evidence was

presented that the parties formed a contract that incorporated Exhibit B. For the reasons stated herein, we affirm the trial court's judgments.

## A. Preservation of Arguments for Directed Verdict and JNOV

As an initial matter, Defendant argues Plaintiff has waived the right to challenge the denial of its directed verdict and judgment notwithstanding the verdict on appeal because Plaintiff failed to assert specific grounds when it made its motion for directed verdict at trial.

As a JNOV "is essentially a renewal of an earlier motion for directed verdict," we must first address any preservation question before we address the merits. *Vanguard Pai Lung, LLC v. Moody*, 387 N.C. 376, 380, 912 S.E.2d 788, 792 (2025) (quoting *Scarborough v. Dillard's Inc.*, 363 N.C. 715, 720, 693 S.E.2d 640, 643 (2009)). Our Supreme Court, in *Vanguard Pai Lung, LLC v. Moody,* adopted the rule that "to preserve an issue for use in a motion for JNOV under Rule 50(b), the movant first must have timely moved for a directed verdict based on that same issue." *Id.* *Vanguard* further addressed the follow-up question of "how does a court determine what specific issues a litigant raised in a motion for a directed verdict?" *Id.* (cleaned up).

While Rule 50 states "[a] motion for a directed verdict shall state the *specific* grounds therefor," the Court in *Vanguard* adopted the rule from *Anderson v. Butler* that courts "need not inflexibly enforce the rule when the grounds for the motion are apparent to the court and the parties" but limited this rule to "uncomplicated, single-

issue cases where the basis for the motion is the sufficiency of the evidence supporting the elements of the claim." N.C. Gen. Stat. § 1A-1, Rule 50(a) (emphasis added); *Vanguard*, 387 N.C. at 381, 912 S.E.2d at 792-93 (quoting *Anderson v. Butler*, 284 N.C. 723, 729, 202 S.E.2d 585, 588 (1974)).

> In cases involving "multiple defenses and theories of liability, it is critical that the movant direct the trial court with specificity to the grounds for its motion for a directed verdict." When a specific argument or theory that forms a ground for relief is not expressly stated in a directed verdict motion, that issue is waived both at the directed verdict stage and later at the JNOV stage.

*Vanguard*, 387 N.C. at 381, 912 S.E.2d at 793 (quoting *Plasma Ctrs. of Am., LLC v. Talecris Plasma Res., Inc.*, 222 N.C. App. 83, 88, 731 S.E.2d 837, 841 (2012)).

We agree with Defendant's assertion that this is not a "simple, single-issue case where Plaintiff's grounds for directed verdict were obvious." The party moving for directed verdict must state specific grounds for directed verdict; the only exception is in "uncomplicated, single-issue cases where the basis for the motion is the sufficiency of the evidence supporting the elements of the claim." *Id.* Plaintiff presented its motion for directed verdict as follows:

> I know it's very unusual but it is allowed. The plaintiff - - and I don't plan on making any argument. But for the purpose of the record, the plaintiff would also ask for directed verdict on its claims. Again, recognizing it's abnormal.

Plaintiff argues in its reply brief that this case *is* a straightforward claim of breach of contract and what was sent to the jury for consideration were the elements

of breach of contract. While Plaintiff's overarching issue was for breach of contract, Plaintiff introduced many theories of how Defendant breached the Contract at the pre-trial conference. The pre-trial conference occurred earlier on the same day Plaintiff made its motion for directed verdict. The pre-trial conference order states:

> 14. The Plaintiff contends that the contested issues to be tried by the jury are as follows:
>
> a. Whether Defendant breached the contract, anticipatory or otherwise, between the parties by failing to recognize Plaintiff's rights to use the property.
>
> b. Whether Defendant breached the contract by refusing to record an instrument that would recognize Plaintiff's right to use the property.
>
> c. Whether Defendant breached the contract, anticipatory or otherwise, by entering into an agreement for purchase and sale and option to sell the Property with New Hanover County.
>
> d. Whether Defendant breached the contract, anticipatory or otherwise, by failing and refusing to obtain twenty-two parking spaces for use by Plaintiff.
>
> e. Whether Plaintiff has been damaged by the breach of the contract by Defendant.

Because Plaintiff failed to assert specific grounds for its motion for directed verdict and this is not a case involving an "uncomplicated, single-issue [] where the basis for the motion is the sufficiency of the evidence supporting the elements of the claim," we conclude Plaintiff has failed to preserve the arguments regarding its motion for directed verdict and subsequent motion for JNOV. *Id.*

**B. Jury Instruction**

Plaintiff argues the trial court erred by framing issue one to the jury as, "did the plaintiff and defendant enter into a contract with respect to the terms set forth in Exhibit B." Plaintiff argues the issue as presented was legally flawed because by "presenting Exhibit B as a separate contract requiring independent offer, acceptance, and consideration, the court created an extraneous issue unsupported by the evidence, the law, or even the contentions of the parties." In contrast, Defendant argues issue one was properly presented because the central question at trial was not whether there was formation of a general contract, but specifically whether the parties assented and were bound by the terms of Exhibit B.

This Court reviews challenges to jury instructions *de novo*, considering "the matter anew and freely substitut[ing] its own judgment for that of the trial court." *B.C. v. Palmetto Wellness Grp. NC, LLC*, 299 N.C. App. 150, 154, 918 S.E.2d 663, 667 (2025).

> For an appeal of jury instructions, this Court considers the jury charge contextually, in its entirety, and the party asserting the error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction.
>
> A specific jury instruction should be given when: "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." Failure to give a requested and appropriate jury instruction is a reversible error if the requesting party is prejudiced as a result of the omission.

*D&B Marine, LLC v. AIG Prop. Cas. Co.*, 288 N.C. App. 106, 118-19, 885 S.E.2d 842, 851 (2023) (cleaned up) (quoting *Outlaw v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008)). "Even if a trial court's jury instructions are legally erroneous, however, remand for a new trial is inappropriate unless it is shown that 'a different result would have likely ensued had the error not occurred.'" *Schroeder v. Oak Grove Farm Homeowners Ass'n*, 388 N.C. 208, 215, 919 S.E.2d 132, 137 (2025) (quoting *Chappell v. N.C. Dep't of Transp.*, 374 N.C. 273, 282, 841 S.E.2d 513, 520 (2020)).

Plaintiff asserts that the instruction given to the jury invited them to "silo Exhibit B and reject it without invalidating the entire [Contract], which is a legal impossibility," and had the jury been instructed to "consider whether the parties entered into a contract on December 31, 2015, the only options would have been to enforce the [Contract] in full, including the Parking Rights set forth on Exhibit B, or to find no contract had been formed." Plaintiff argues if Defendant had wanted the jury to consider whether Exhibit B was part of the Contract, the issue should have been framed as were "the terms set forth on Exhibit B terms of the [Contract]?" Further, Plaintiff argues framing the question in this manner would have allowed it "to address this issue with a subsequent or related interrogatory if this issue was marked yes by the jury, which would be whether the parties have [a Contract] for the sale of the Property since the Parking Rights set forth on Exhibit B were material terms." Because Plaintiff asserted at trial that the terms within Exhibit B were part of the consideration provided to them by Defendant for the sale of the Property, it

now further contends that asking the jury to consider Exhibit B as a separate contract "raises extraneous issues of offer, acceptance, and adequate consideration," which was not the issue at trial.

However, Plaintiff has failed to establish that the result of the trial would have likely been different had the alleged error not occurred. Evidence presented at trial establishes that a clear dispute existed between the parties as to whether there was mutual assent to the terms contained in Exhibit B. As a necessary prerequisite to there being a breach of contract, the trial court formed the first issue for the jury to determine whether there was a valid contract to be breached. *See J.T. Russell & Sons, Inc. v. Silver Birch Pond L.L.C.*, 217 N.C. App. 290, 295, 721 S.E.2d 699, 703 (2011) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."). Whether the jury had considered Exhibit B as a part of the Contract or separately as they did, the jury's focus would have still been on the terms of Exhibit B. While Plaintiff asserts the terms of Exhibit B were part of the consideration towards the sale of the Property, the jury in either situation would have been tasked with first considering whether there was mutual assent to those terms in Exhibit B as part of the Contract, a highly contested issue at trial, before considering whether consideration was adequate. The remaining terms set forth in the Contract were undisputed and evidence was presented establishing that the sale of the Property happened as scheduled and, further, that the deed transferring the Property did *not* contain the terms in Exhibit B.

Knowing the jury answered "NO" to issue one, we can deduce that either the jury concluded there was no mutual assent to the terms within Exhibit B or there was mutual assent but not adequate consideration to support the terms of Exhibit B. Because the crux of Defendant's argument at trial was the lack of mutual assent to the terms within Exhibit B and the parties further dispute the interpretation of some of the terms and conditions within Exhibit B, it is not likely the jury would have found there to be mutual assent to the material terms of Exhibit B whether considered as part of a single contract or separately.

### III.   Conclusion

For the foregoing reasons, we affirm the judgments of the trial court. Plaintiff failed to preserve its arguments for appeal on the trial court's denial of its motions for directed verdict and JNOV.  We further hold the trial court neither erred nor prejudicially erred in its instruction to the jury and formation of issue one.

AFFIRMED.

Judges HAMPSON and MURRY concur.

Report per Rule 30(e).